OPINION
{¶ 1} Respondent-appellant, Robert C. Hunter, appeals the Judgment Entry of the Portage County Court of Common Pleas, in which the trial court overruled his motion to terminate a mutual civil stalking protection order (CSPO). For the following reasons, we affirm the decision of the trial court. *Page 2 
 {¶ 2} In the spring of 2004, Hunter and petitioner-appellee, Janice Jones, started a romantic relationship. Jones attempted to end the relationship near the end of the year. After Jones tried to separate herself from Hunter, he continued attempts to maintain the relationship; including numerous threatening telephone calls, text messages, and emails. On July 25, 2005, criminal charges were filed against Hunter and two days later Jones filed a petition for a CSPO. Hunter subsequently pleaded guilty to Aggravated Menacing in violation of R.C. 2903.21. After a hearing on August 8, 2005, before a magistrate, the parties agreed to a CSPO effective through August 8, 2010.
 {¶ 3} About twenty months later, Hunter motioned to terminate the CSPO issued to Jones on the grounds that there had been no violations of the CSPO and the agreement provided for termination of the order if no violations were committed. At the hearing conducted on May 1, 2007, by a magistrate, Hunter orally requested, in the alternative, modification of the current order. The parties stipulated Hunter had complied with the CSPO. At the hearing, testimony revealed that both parties reside in Aurora and frequent some of the same establishments. Also, at the time of the hearing, there had been six incidental contacts between the parties; upon each of the contacts, Hunter had complied with the terms of the CSPO.
 {¶ 4} The magistrate concluded that the termination or modification of the CSPO was not warranted. In addition, he found that the events were finally stopped by the issuance of the CSPO, which is currently the only means for the court to monitor and control Hunter. Furthermore, Jones is single and lives alone and still has a "reasonable and oppressive" fear of Hunter. The CSPO "must remain in place to *Page 3 
encourage [Hunter] to leave [Jones] alone and give [Jones] some modicum of peace of mind." The magistrate further found that the order "does not require termination or modification of the current order upon one year's compliance, as [Hunter] suggested]."
 {¶ 5} Hunter filed objections which the trial court overruled. The court then adopted the magistrate's decision and issued an order overruling Hunter's Motion to Terminate.
 {¶ 6} Hunter timely appeals and raises the following objections:
 {¶ 7} "[1.] The trial court erred and abused its discretion by adopting the magistrate's decision because the magistrate erroneously construed the agreement that controlled the rights of the parties."
 {¶ 8} "[2.] The trial court erred and abused its discretion by adopting the magistrate's decision where the decision was against the sufficiency and weight of the probative evidence."
 {¶ 9} "When reviewing an appeal from a trial court's decision to accept or reject a magistrate's decision, an appellate court must determine whether the trial court abused its discretion." Hayes v.Hayes, 11th Dist. No. 2005-L-138, 2006-Ohio-6538, at ¶ 10. Where the court's decision is supported by a substantial amount of competent and credible evidence, the decision will not be reversed absent an abuse of discretion. Bates v. Bates, 11th Dist. No. 2000-A-0058, 2001-Ohio-8743,2001 Ohio App. LEXIS 5428, *8, citing Bechtol v. Bechtol (1990),49 Ohio St.3d 21, 23.
 {¶ 10} In his first assignment of error, Hunter alleges that a binding settlement agreement was entered into on August 8, 2005, when the parties consented to the CSPO. He claims that the magistrate's decision was based on an incorrect *Page 4 
interpretation of a settlement agreement that renders the agreement illusory, thus constituting error and abuse of discretion. He further argues that the agreement must be interpreted in a manner that does not afford Jones the ability to dictate performance.
 {¶ 11} R.C. 2903.214 governs the issuance of a civil stalking protection order. R.C. 2903.214 states, in relevant part, as follows: "After an ex parte or full hearing, the court may issue any protection order, with or without bond, that contains terms designed to ensure the safety and protection of the person to be protected by the protection order[.]" R.C. 2903.214(E)(1). "Any protection order issued pursuant to this section shall be valid until a date certain but not later than five years from the date of its issuance. Any protection order issued pursuant to this section may be renewed in the same manner as the original order was issued." R.C. 2903.214(E)(2)(a) and (b).
 {¶ 12} Hunter claims that "absent their agreement, the CSPO was not reviewable (except perhaps under Civil Rule 60)." There is no section of R.C. 2903.214 providing for a modification of an order; however, courts have held that an order made pursuant to R.C. 2903.214 is subject to modification or termination "if the movant shows that the original circumstances have materially changed and it is no longer equitable for the order to continue."Prostejovsky v. Prostejovsky, 5th Dist. No. 06-COA-033, 2007-Ohio-5743, at ¶ 26.
 {¶ 13} Hunter maintains that there was a settlement agreement made with respect to the CSPO reached at the August 8, 2005 hearing and that the magistrate erroneously construed that agreement. There is language in the written order signifying that the parties agreed that the court could review the terms of the CSPO upon the motion of Hunter. However, there is no language in the order that indicates that the *Page 5 
CSPO would terminate if Hunter did not violate the order for one year. Nor do we have the transcript of the August 8, 2005 hearing indicating the parties agreed that the order would be terminated if there were no violations within a year. Hunter admits that "no record [of the hearing] * * * was created". We are unable to consider evidence that was neither before the magistrate nor the trial court judge when their decisions were rendered. Appellate Rule 12(A)(1)(b) provides that a court of appeals is to "[determine the appeal on its merits on * * * the record on appeal under App. R. 9." See Napper v. Napper, 3rd Dist. No. 1-02-82, 2003-Ohio-2719, at ¶ 5 ("an appellate court's review is strictly limited to the record that was before the trial court, no more and no less"); Hill v. Home Roam Pools, 11th Dist. No. 2003-A-0097, 2003-Ohio-5862, at ¶ 4 (a "copy of a letter * * * not considered by the trial court in reaching its decision * * * cannot be considered on appeal").
 {¶ 14} Based on the evidence before the magistrate at the time he made his decision, the magistrate correctly determined as per the language of the order, that the CSPO does not require termination or modification upon one year's compliance.
 {¶ 15} Hunter further argues that Jones was precluded from presenting evidence of Hunter's pre-CSPO conduct in opposition to the motion to terminate, because they are barred from re-litigating the issues, since they reached a settlement agreement. However, Hunter's counsel continually asked questions of Jones regarding her conduct, as well as Hunter's conduct, prior to the CSPO, voluntarily putting the pre-CSPO conduct at issue. As a consequence, Hunter waived any objection to Jones' testimony regarding conduct giving rise to the CSPO. Furthermore, the court could not properly *Page 6 
evaluate whether or not the original circumstances have materially changed without considering Hunter's conduct that gave rise to the issuing of the CSPO.
 {¶ 16} Hunter additionally argues that the way the magistrate construed the CSPO rendered it illusory because it "afforded Jones a right to prevent termination of the CSPO is she `didn't want it to end'". However, based on the discussion above, Jones did not have the power to unilaterally dictate performance. Thus, the agreement was not illusory.
 {¶ 17} Hunter's first assignment of error is without merit.
 {¶ 18} Hunter next claims that the trial court abused its discretion in adopting the magistrate's decision because the decision was against both the sufficiency and the weight of the evidence.
 {¶ 19} The standard in a sufficiency of the evidence challenge is: viewing the evidence in a light most favorable to the prosecution, "[a] reviewing court [should] not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proved beyond a reasonable doubt." State v. Schlee, 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *14, citingState v. Eley (1978), 56 Ohio St.2d 169, at the syllabus.
 {¶ 20} "Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Higgins, 11th Dist. No. 2005-L-215, 2006-Ohio-5372, *Page 7 
at ¶ 35, citing State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. When reviewing a manifest weight challenge, the appellate court sits as the "thirteenth juror." Id. at ¶ 36 (citation omitted).
 {¶ 21} "Weight of the evidence involves `the inclination of the greater amount of credible evidence.'" Thompkins,78 Ohio St.3d at 387 (citation omitted) (emphasis removed). "[W]eight of the evidence addresses the evidence's effect of inducing belief."State v. Wilson,113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 25 (citation omitted). "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" Id.
 {¶ 22} Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine. State v. Thomas (1982), 70 Ohio St.2d 79, at the syllabus. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins,78 Ohio St.3d at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 23} Hunter alleges that his "post-CSPO conduct did not cause Jones' alleged continued fear". However, "[i]t is well-settled that when assessing the credibility of witnesses, `[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" State v. McKinney, 11th Dist. No. 2006-L-169, 2007-Ohio-3389, at ¶ 49 (citations omitted). "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Warren v.Simpson, 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, *8. "If the evidence is susceptible to *Page 8 
more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict."Grayson, 2007-Ohio-1772, at ¶ 31 (citation omitted). "Moreover, in a criminal bench trial, a reviewing court will not reverse a conviction `where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt.'" Id. (citation omitted).
 {¶ 24} The magistrate's decision concluded that the "only events that finally stopped [Hunter] from terrorizing [Jones] were the criminal charges and the petition for the present order." Further the magistrate found that Jones "is single and lives alone. She still fears [Hunter]. This fear is reasonable and oppressive." The magistrate concluded that the CSPO must remain in place.
 {¶ 25} In Prostejovksy, 2007-Ohio-5743, the court reasoned that "[t]he basis of the [CSPO] was appellant's long-term problem with controlling his anger and his behavior," and, although he had complied with the order, the court found his compliance "insufficient to demonstrate that there has been a material change of circumstances." Id. at ¶ 35.
 {¶ 26} In the instant case, Hunter testified that the order was "the only thing that has stopped the contact [with Jones]." Jones testified that when she sees Hunter's vehicle or a vehicle similar to his, "it always makes [her] scared that something's going to happen again." She stated that she is "overly paranoid about things. [She] make[s] sure [her] doors are locked. * * * [And she is] still in fear that someday [Hunter] will come roaring back as he always did before." Jones said she felt that the CSPO gave her a "certain amount of protection to know that everything ended once that went in place." *Page 9 
 {¶ 27} Hunter testified that he had complied with the order since its inception, twenty months prior to the hearing. He attributed his former conduct to his alcoholism which he has sought to overcome. However, Jones testified that during her relationship with Hunter, she tried to help him stop drinking and he always returned to drinking.
 {¶ 28} Jones' testimony demonstrated she still was in fear of Hunter and felt the CSPO gave her protection. Although Hunter has complied with the order, he has failed to demonstrate a material change of circumstance which would justify early termination of the order. Because some competent, credible evidence supports the trial court's judgment, we cannot find that the trial court's judgment is against the manifest weight of the evidence. In addition, there was sufficient evidence to support the conclusion that there was no material change of circumstance.
 {¶ 29} Hunter's second assignment of error is without merit.
 {¶ 30} For the foregoing reasons, the Judgment Entry of the Portage County Court of Common Pleas, denying Hunter's Motion to Terminate or Modify the SPSO, is affirmed. Costs to be taxed against appellant.
Cynthia Westcott Rice, J., Colleen Mary Otoole, J., concur. *Page 1