[Cite as *Violante v. Brady Lake*, 2012-Ohio-6220.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| THOMAS A. VIOLANTE, JR., et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2012-P-0054** |
| VILLAGE OF BRADY LAKE, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2009 CV 0368.

Judgment: Affirmed.

*Patrick F. Rosati*, 1280 SOM Center Road, Suite 259, Mayfield Heights, OH 44124 (For Plaintiffs-Appellants).

*Errol A. Can* and *Joel A. Holt*, Williams, Welser, Kratcoski & Can, L.L.C., 11 South River Street, Ste. A., Kent, OH 44240 (For Appellees-Village of Brady Lake and Robert T. Mansfield, Zoning Inspector).

*Ellen M.* and *Mehmet Berisha*, pro se, 6345 West Shore Drive, Kent, OH 44240 (Appellees).

DIANE V. GRENDELL, J.

{¶1} Plaintiffs-appellants, Thomas and Linda Violante, appeal from the Order and Journal Entry of the Portage County Court of Common Pleas, adopting the Magistrate's Order dismissing the Violantes' Complaint, ruling in favor of the defendants on their counterclaims and issuing a permanent injunction against the Violantes. The issues to be determined by this court are whether a deed is unambiguous when it

contains specific distances to define property boundaries, whether a natural landmark must be used to define a boundary when one is not contained in the deed's property description, whether adverse possession applies when there is limited evidence about prior owners' use of the property, whether a property owner's water rights are improperly taken when the deed does not include a right to own the shoreline, and whether a trial court errs in finding one expert witness to be more credible than another. For the following reasons, we affirm the decision of the court below.

{¶2} On March 10, 2009, Thomas and Linda Violante filed a Complaint against Ellen and Mehmet Berisha, Zoning Inspector Robert Mansfield, and the Village of Brady Lake. In the Complaint, the Violantes asserted that the Berishas, their neighbors, had dumped fill dirt into Brady Lake, as well as on the Violantes' real property and shoreline, and also stored personal property on the Violantes' real property. They further argued that a dock was built on or near the area filled with dirt, which interfered with the Violantes' use of their property. The Village of Brady Lake "did little to resolve the problem." The Complaint stated that the Village had the property in the area surveyed and ordered the Violantes, through a letter, to remove personal property from a portion of the land that the Village asserted it owned.

{¶3} Three claims were raised in the Complaint. In Count One, the Violantes asserted a Trespass to Land claim, arguing that the Berishas entered their land without permission and made alterations. In Count Two, the Violantes asserted a Quiet Title claim, requesting a declaration that the title to the disputed real property was the Violantes' and that the defendants be enjoined from asserting any interest in the property. Count Three was an Unconstitutional Taking claim, in which the Violantes

2

asserted that the Village of Brady Lake and Mansfield, in writing a letter stating that the land belonged to the Village and in allowing the Berishas to "create additional land" by dumping fill dirt, caused the Violantes to lose shoreline. The Violantes asked for compensatory damages, a permanent injunction, and a declaratory judgment in their favor. On the same date, the Violantes filed a Motion for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction.

{¶4} Defendants, Village of Brady Lake and Robert Mansfield, Zoning Inspector for the Village, filed an Answer and Counterclaim on April 15, 2009. They raised a Counterclaim for Quiet Title, Trespass, and Injunctive Relief, in which they argued that the Violantes had asserted dominion and control over the shoreline adjacent to their property, owned by the Village, and failed to remove personal property from that area.

{¶5} The Berishas filed an Answer and Counterclaim on April 16, 2009, asserting that the Violantes had placed personal property on the real property owned by the Village, which blocked the Berishas' use of their dock, and requesting a permanent injunction to prohibit this activity.

{¶6} On August 4, 2009, a Magistrate's Order was issued, denying the Violantes' request for a temporary restraining order and a preliminary injunction.

{¶7} Following a Motion filed by the Berishas, alleging that the Violantes had interfered with their dock, a September 15, 2009 Magistrate Order was issued, ordering that all parties be restrained from trespassing on the others' realty and altering the personal property of the other parties.

{¶8} A trial was held before the magistrate in this matter on September 14-15, 2010. The following testimony was presented.

3

{¶9} Gary Schuller, a licensed surveyor, testified for the Violantes. He reviewed various materials related to the boundary dispute. He explained that both the Violantes' and the Berishas' properties previously belonged to the Merrills, who were the subdividers of the land. A 1934 deed showed that the Merrills owned the land "along the margin of Lake Brady," which he explained was the shoreline, or where the water meets the land. The next deed in succession had the same language regarding the property boundaries. A ten-year lease from 1940 to 1950 also leased the property to the shoreline, with a reservation of a footpath for the Merrills, as did another lease that commenced in 1948.

{¶10} In 1958, the Hissoms leased the property with the same boundaries. The land was subdivided beginning in 1965, when the Berishas' and the Violantes' property was divided. In 1966, the Hissoms purchased the property that later became the Violantes' property. The description in that deed was prepared by James Bowen and did not include language stating that the property boundary extended to the shoreline. The Hissoms' property was subsequently sold to the Lemons, also excluding the shoreline language. This property was finally sold from the Lemons to the Violantes in 2004, again excluding the shoreline language. Schuller explained that the Berishas' deed, however, includes a specific statement that the property goes to the shoreline. He explained that the Violantes' deed "directly makes a call for the Bowen survey" and explained that when a survey is referenced in a description of property in a deed, "it becomes part of that description."

{¶11} The Violantes' deed contained the following language as the real estate description:

{¶12} Situated in the County of Portage, Township of Franklin, and State of Ohio: And being a portion of Lot #35 in Franklin Township and bounded and described as follows: Beginning at a point in the centerline of T.H. 152 (Merrill Road) at its intersection with the centerline of West Shore Drive (T.H. 526); thence along the established centerline of West Shore Drive, the following courses and distances; North 45 deg. 35' 33'' East 413.00 feet, North 22 deg. 23' 00'' East 276.74 feet, North 11 deg. 59' 00'' West 355.37 feet, to a point of curvature and the true place of beginning of the land herein described; thence along the arc of the curve to the right having a radius of 318.31 feet * * * to a point; thence North 88 deg. 41' East a distance of 61.63 feet to an iron pipe and passing over the iron pipe at 15.22 feet from the road center; thence North 82 deg. 26' 0'' East a distance of 17.84 feet to an iron pipe; thence South 52 deg. 31' 16'' East a distance of 72.99 feet to an iron pipe; thence South 53 deg. 00' West a distance of 139.23 feet to a point in the centerline of said West Shore Drive and passing over an iron pipe at 16.55 feet from the road center; thence North 11 deg. 59'' West along said centerline a distance of 107.01 feet to the true place of beginning and containing 0.205 acres of land, more or less, as surveyed in June, 1966 by James W. Bowen * * *.

{¶13} Schuller explained that the Violantes' deed called for "iron pipes alone," but included a survey plat showing the iron pipes at the shoreline. He testified that, in

5

his opinion, the boundary line for the Violantes' property under the deed "is the shoreline." He explained that the deed itself does not mention the shoreline but he believed the plat of the survey does.

{¶14} Robert Thomas Mansfield, the Zoning Inspector for the Village of Brady Lake, explained that at some point, he was made aware that the Berishas were dumping fill dirt into Brady Lake, but he believed no action to prevent this was required. On January 27, 2009, he sent a letter to the Violantes, stating that certain portions of their property belonged to the Village of Brady Lake and asking them to remove certain personal property from that area.

{¶15} The 1966 survey plat of the Violantes' property, created by James Bowen, was presented and shows directional measurements on each side of the property identical to those in the deed, as well as several markings labeled "I.P.," which stands for "iron pipes," which were used to mark the property boundaries. It also has several sketched, rounded lines near these markings and the area within these is labeled "Brady Lake."

{¶16} Thomas Violante testified that he had seen the Berishas dump fill dirt in the water near their home and, in 2007, Mehmet Berisha started dumping fill dirt on his shoreline. When he purchased the property, he believed it was "waterfront property," which included access to the shoreline and riparian rights. He believed he was no longer allowed to access the shoreline or the water due to the Village's claim to the property.

{¶17} Mehmet Berisha testified that he did dump dirt into the area along Lake Brady, but only on his portion of the property, not on the Violantes'.

{¶18} The deposition of Don Trocchio, a licensed surveyor, was also presented. Regarding the Violantes' deed, he explained that it defined the property boundaries with reference to metes and bounds and that "iron pipes" were used as monuments to mark the property boundaries. He noted that there was a sketch of the shoreline on the 1966 Bowen survey plat but that he did not believe it set the boundaries of the Violantes' property. He noted that surveys sometimes mark natural features, such as a shoreline, without identifying them as property lines, "just to give more information onto the map." His opinion was that the shoreline was not the property line, based on the legal description of the property. He did not believe any of the fill dirt added by the Berishas was placed on the Violantes' property, but instead was on property that belonged to the Village. When he went to the property, he found stakes that appeared to be consistent with Bowen's surveys. Trocchio also testified that the legal description contained in the Violantes' deed was consistent with the 1966 Bowen survey of their property as it relates to the area that faces or adjoins the lake.

{¶19} On September 26, 2011, a Magistrate's Order was issued. The magistrate found that the Berishas' deed referenced the shoreline of Brady Lake as the property's eastern boundary, while the Violantes' deed did not reference the shoreline as its eastern boundary line. It was found that the Village of Brady Lake took ownership of Brady Lake in 1983. The magistrate further found that none of the deeds in the chain of title to the Violantes' property following the 1966 Bowen survey referenced the lake or its shoreline as a boundary line.

{¶20} The magistrate also found that the Berishas began adding "large amounts of fill to both their property and the property of Brady Lake" in 2005. The magistrate

7

found that Schuller testified that the Violantes' property should extend to the shoreline of Brady Lake, while Trocchio stated that the property boundary did not extend to the shoreline.

{¶21} In the Conclusions of Law, the magistrate found that the Violantes' deed was clear and unambiguous, that the description in the deed was made by metes and bounds with no reference to the lake, that the property extends only to the measurements contained in the deed, and that the property's boundary did not extend to the shoreline. It was found that any fill dirt added by the Berishas which extends beyond the shoreline was placed on the property of the Village, not on the Violantes' property. It was also held that there was no unconstitutional taking of the Violantes' property. The magistrate held that the Violantes failed to prove their claims and dismissed their Complaint. He further ruled in favor of the Village on its counterclaim and found that the Village owned the shoreline of Brady Lake. He found that the Berishas had proved their claim for damages and they were awarded a sum of $10.00 and costs. The Order permanently enjoined the Violantes from blocking the defendants' access to their realty or rights to use a dock on Brady Lake.

{¶22} On October 31, 2011, the Violantes filed Objections to the Magistrate's Decision, in which they raised essentially the same arguments as they raise in their assignments of error before this court. These objections were later supplemented.

{¶23} On May 2, 2012, the trial court issued an Order and Journal Entry. In this Entry, the court overruled the objections to the Magistrate's Order, stated that it had conducted an independent review of the matter, and adopted the Magistrate's Order.

{¶24} The Violantes timely appeal and raise the following assignments of error:

8

{¶25} "[1.] The trial court erred by not giving due consideration to the facts on Bowen's recorded 1966 survey, notwithstanding the clear call for the survey found within the four corners of the deed.

{¶26} "[2.] The trial court erred by failing to recognize that there was a latent ambiguity in the Violante[s'] deed.

{¶27} "[3.] The trial court erred by giving undue consideration to the unreliable testimony of Villages'[] expert.

{¶28} "[4.] The trial court erred in wrongfully applying the principles of Lembeck v. Nye.

{¶29} "[5.] The trial court erred in considering a line defined by artificial monuments as having [a] greater value than a natural boundary, such as a lakeshore, when the artificial monument and natural boundary are in conflict.

{¶30} "[6.] The trial court erred in not considering occupation as an indication of intent and as evidence of a title right.

{¶31} "[7.] The trial court erred by extinguishing Plaintiff[s'] Littoral/Riparian Rights and Property Rights in finding that they were not taken and in upholding the decision to give the award of [] their lakeshore property to the Village."

{¶32} "On appeal, a trial court's adoption of a magistrate's decision will not be overruled unless the trial court abused its discretion in adopting the decision." *Harris v. Transp. Outlet*, 11th Dist. No. 2007-L-188, 2008-Ohio-2917, ¶ 12, citing *Brown v. Gabram,* 11th Dist. No. 2004-G-2605, 2005-Ohio-6416, ¶ 11; *Sloan v. Shafer Commercial & Indus. Servs., Inc.*, 11th Dist. No. 2008-T-0013, 2008-Ohio-4765, ¶ 10. Although the Violantes argue that this standard generally applies in domestic relations

9

cases, we note that the foregoing cases were civil in nature and not related to domestic relations. Further, to the extent that they assert this standard is not applicable to questions of law, the appropriate standard will be applied within the individual assignments of error.

{¶33} The first and fourth assignments of error will be considered jointly, since they both relate to the Violantes' assertion that their property deed was ambiguous and that the court should find that they owned land outside of the deed's property boundary description.

{¶34} In their first assignment of error, the Violantes argue that the lower court erred in not giving due consideration to the Bowen 1966 survey when determining that their land did not extend to the shoreline. They argue that pursuant to the survey, incorporated into the deed by reference, they owned their property "to the shoreline." They also assert that the deed was ambiguous.

{¶35} "The construction of written contracts and instruments, including deeds, is a matter of law. * * * Questions of law are reviewed *de novo.*" (Citations omitted.) *Long Beach Assn., Inc. v. Jones*, 82 Ohio St.3d 574, 576, 697 N.E.2d 208 (1998). "Under a de novo review, an appellate court may interpret the language of the contract substituting its interpretation for that of the trial court. See *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 313, * * * 667 N.E.2d 949. Only if a term of the contract is determined to be ambiguous will the matter be labeled as a question of fact. *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322." (Citation omitted.) *Wuenschel v. Northwood Energy Corp.*, 11th Dist. No. 2008-A-0039, 2008-Ohio-6879, ¶ 37.

10

{¶36} "Where terms in an existing contract [or deed] are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Long Beach Assn.* at 577, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978); *Parker v. Parker*, 4th Dist. No. 99CA845, 2000 Ohio App. LEXIS 4697, *8 (Sept. 28, 2000) ("[w]e may not interpret the parties' intent in a manner contrary to the clear, unambiguous language of the deed"). "Courts, in construing deeds and like written instruments, must be guided by the intention of the parties to them, and this must be determined by the language used in the instrument, the question being not what the parties meant to say, but the meaning of what they did say, as courts can not put words into an instrument which the parties themselves failed to do." *Larwill v. Farrelly*, 8 Ohio App. 356, 360 (9th Dist.1918).

{¶37} A court may consider extrinsic evidence if the terms of the contract are ambiguous or unclear. *Sugarhill Ltd. v. Brezo*, 11th Dist. No. 2004-G-2579, 2005-Ohio-1889, ¶ 35. "Contractual terms are ambiguous if their meaning cannot be deciphered from reading the entire instrument or if the terms are reasonably susceptible to more than one interpretation." *Look v. H&M Custom Home Builders Co., Inc.*, 11th Dist. No. 2011-G-3036, 2012-Ohio-3017, ¶ 18, citing *Aultman Hospital Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 54, 544 N.E.2d 920 (1989).

{¶38} In the present matter, the lower court determined that the Violantes' deed was unambiguous. It determined that since the deed did not state that the property extended to the shoreline, and only stated the measurements of the boundaries to

11

which the property extended, there was no need to consider external evidence as to whether the shoreline was a boundary.

{¶39} The Violantes assert that the deed cites to the separate 1966 Bowen survey plat, which they argue shows that the boundary actually extends to the shoreline and that the trial court did not consider this. Pursuant to *Sellman v. Schaaf*, 26 Ohio App.2d 35, 269 N.E.2d 60 (3rd Dist.1971), "[a] reference in a deed to a plat incorporates the plat and constitutes an adoption of the survey as a part of the description. * * * The survey as actually made controls the representation of it on the plat." *Id.* at 41.

{¶40} A review of the deed shows that it states specific measurements for each boundary of the Violantes' property, which extended to certain iron pipe markers. It makes no statement regarding the shoreline as a boundary. There is nothing on the face of the deed that appears ambiguous or open to a different interpretation, since the measurements account for all boundaries of the property. The measurements themselves do not leave open a portion of the property or fail to set a boundary on each side.

{¶41} Further, a review of the Magistrate's Order does not show that the 1966 Bowen survey was not considered as part of the description of the property in interpreting the deed and determining that it was unambiguous. In the present matter, the deed stated the metes and bounds description and added, "as surveyed in June, 1966 by James W. Bowen." A review of the survey shows a waterline sketched, but does not appear to make any clear statement that the boundary was the shoreline or that the property's boundary would move if the shoreline moved. As was noted by Trocchio in his testimony, a shoreline is frequently sketched on a survey plat without

12

specific intent by the surveyor for the shoreline to be considered a legal property boundary. The survey showed the iron pipe and directional measurements extending to these pipes, just as was described in the property description contained in the deed. The survey does not appear to contradict the explicit description in the deed regarding the property measurements. That description does not make any statement that the survey plat contains additional information, but describes the specific boundaries "as surveyed." Based on a review of the deed and the survey plat, we cannot find that the trial court erred in concluding that the deed was unambiguous and that the property line did not extend to the shoreline.

{¶42} In their fourth assignment of error, the Violantes argue that the trial court erred by applying *Lembeck v. Nye*, 47 Ohio St. 336, 24 N.E. 686 (1890), since, inter alia, the body of water being considered as a boundary in that case was a non-navigable body of water.

{¶43} The Magistrate's Order in the present matter cited *Lembeck* for the proposition that when a description in a deed is unambiguous, the description is made by "metes and bounds" and no reference is included to a natural boundary such as a lake, only the land included in the deed language passes to the grantee. We note that the trial court did not cite *Lembeck* for any other proposition than the one outlined above. This proposition is not exclusive to the facts of the *Lembeck* case, and has been cited in various other cases. "When lands are granted by metes and bounds, all the area within those bounds, and no more, passes." *Lockwood v. Wildman*, 13 Ohio 430 (1844), paragraph four of the syllabus; *Alexander v. Reagan*, 11th Dist. No. 91-P-2280, 1992 Ohio App. LEXIS 461, *6 (Feb. 7, 1992). Regardless of whether *Lembeck* is

13

distinguishable, various cases allowed the court to determine that the unambiguous language of the deed required it to hold that the only land owned by the Violantes was that specifically stated by the measurements in the deed.

{¶44} Further, this proposition was simply provided as support for the conclusion that the deed's description passed only the land explicitly stated in the deed description. Regardless of the applicability of the law in *Lembeck*, the trial court could have concluded that the description in the deed was unambiguous and that it did not include a description of the property to the shoreline.

{¶45} The first and fourth assignments of error are without merit.

{¶46} In their second assignment of error, the Violantes argue that there was a latent ambiguity in the deed, such that the trial court was required to consider other evidence that the shoreline was intended to be included in the deed to the Violantes, such as prior deeds and leases that defined the property's boundaries as extending to the "shoreline."

{¶47} As discussed above, the construction and interpretation of a contract is reviewed de novo. *Long Beach Assn.*, 82 Ohio St.3d at 576, 697 N.E.2d 208.

{¶48} "A latent ambiguity is a defect which does not appear on the face of language used or an instrument being considered. It arises when language is clear and intelligible and suggests but a single meaning, but some intrinsic fact or some extraneous evidence creates a necessity for interpretation or a choice between two or more possible meanings, as where the words apply equally well to two or more different subjects or things." *Conkle v. Conkle*, 31 Ohio App.2d 44, 51, 285 N.E.2d 883 (5th Dist.1972).

14

**{¶49}** Latent ambiguities are frequently considered as they relate to wills, in which the language may be clear but can apply to different people based on extrinsic evidence. In *Conkle*, a gift was given to the testator's "grandchildren" but the matter was complicated by circumstances surrounding adopted children. *Id.* at 52. In such cases, the language contained in the document is unambiguous but circumstances outside of the document create an ambiguity. This is not the case in the present matter.

**{¶50}** The Violantes cite a few arguments supporting their claim that a latent ambiguity exists. They assert that prior deeds, including the Merrills' deed, stated that the property extended to the shoreline. However, they fail to assert how this creates an ambiguity in *their* deed. That prior owners may have owned a larger portion of the property does not mean that the Violantes were intended to own or purchase the shoreline.

**{¶51}** The Violantes also argue that the Berishas' deed sets their property boundary "to the shoreline." However, the fact that the Berishas have different property boundaries than their neighbors, the Violantes, does not create an ambiguity in the Violantes' deed, especially given that the disputed shoreline boundary was found be to owned by the Village, not by the Berishas.

**{¶52}** Based on the foregoing, we find that a latent ambiguity was not shown to exist by the Violantes and the trial court did not err by finding the deed to be unambiguous. *See Boulger v. Evans*, 54 Ohio St.2d 371, 379, 377 N.E.2d 753 (1978) (extrinsic evidence could not be introduced as an attempt to "rewrite the will" when the language in the will was stated "clearly and concisely").

**{¶53}** The second assignment of error is without merit.

{¶54} In their third assignment of error, the Violantes argue that the trial court gave "undue consideration" to the testimony of the Village's expert witness, Don Trocchio. They argue that he did not have sufficient information and resources to reach a proper conclusion as to the property boundaries in this case.

{¶55} As an initial matter, we note that the court below did not make any statement that it relied on the testimony of either witness to determine that the deed was unambiguous. As has been noted, generally, since the construction of deeds is a matter of law, expert testimony is outside evidence that is not admissible to determine whether a deed is unambiguous. *Am. Energy Corp. v. Datkuliak*, 174 Ohio App.3d 398, 2007-Ohio-7199, 882 N.E.2d 463, ¶ 93-94 (7th Dist.).

{¶56} However, to the extent that the court used the experts' testimony to make a determination regarding certain matters, such as whether the fill dirt was dumped on the Violantes' property or the Villages', this argument will be considered. It appears the Violantes are raising a manifest weight argument regarding the trial court's acceptance of the testimony offered at trial. "The [appellate] court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [verdict] must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "In order to determine whether the trial court abused its discretion in adopting the magistrate's decision, [the appellate court should] review and weigh the testimony introduced at the hearing and consider the credibility of the record." *Harris*, 2008-Ohio-2917, at ¶ 33.

**{¶57}** To the extent that the trial court considered such testimony to reach conclusions about whether the fill dirt was dumped on the Violantes' property pursuant to the boundaries defined by the deed, we cannot find that the trial court erred in weighing the testimony presented by both experts. The Violantes are essentially asserting that their expert, Gary Schuller's, testimony was correct and more credible than the appellees' expert, Don Trocchio. It is for the finder of fact, however, to make decisions regarding the credibility and reliability of a witness' testimony and findings of the trial court are given deference because "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *Jones v. Hunter*, 11th Dist. No. 2008-P-0015, 2009-Ohio-917, ¶ 23 ("when assessing the credibility of witnesses, '[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact'") (citations omitted). Both experts testified regarding their education, licensure, and qualifications as surveyors. Both had performed surveys in the past. The fact that the Violantes simply disagree with the conclusion reached by Trocchio does not render his testimony or the trial court's reliance on such testimony improper.

**{¶58}** Although the Violantes assert that Trocchio did not comply with the standards required for a surveyor to determine a boundary, pursuant to Ohio Adm. Code. 4733-37-02, they do not assert how he failed to do so. Pursuant to Ohio Adm. Code 4733-37-01, rules under section 4733-37 are "intended to be the basis for all

17

surveys relating to the establishment or retracement of property boundaries in the state of Ohio." Ohio Adm. Code 4733-37-02 provides that a surveyor should consult various sources of information, including surveys, when a deed description of a property and an adjoining property do not resolve line disputes.

{¶59} In the present matter, Trocchio consulted multiple deeds, documents, and surveys and performed a physical investigation of the property and existing monuments, including the shoreline and the iron pipes. All of this information would be consistent with that required to be considered under the Administrative Code. Regarding the argument that Trocchio did not have sufficient information before him to make determinations regarding the Violantes' property boundaries, as noted in the previous assignment of error, there was no need to consider all of the deeds from prior renters or owners of the Violantes' property, as the issue was what was conveyed to them when they purchased the property and no such information was considered by the court in determining that the deed was unambiguous. Based on the foregoing, there was evidence in the record to support a finding by the trial court that Trocchio's testimony was credible and could be accepted over the conflicting testimony of Schuller, to the extent that such testimony was considered by the trial court.

{¶60} Within this assignment of error, the Violantes cite R.C. 5302.04 for the proposition that a conveyance of real estate should include a conveyance of all rights belonging to the granted estate. They provide limited argumentation as to this statute and do not discuss how this relates to the credibility of the witnesses issue raised under this assignment of error. Further, we note that no analysis or law was cited explaining how the application of this statute is triggered when the conclusion is reached, as it has

18

been by both this court and the trial court, that the deed was unambiguous. As discussed above, if a deed unambiguously conveys property, there is no need to look to outside sources to determine the boundaries of the land to be conveyed.

{¶61} The third assignment of error is without merit.

{¶62} In their fifth assignment of error, the Violantes argue that the trial court erred in determining that an artificially defined boundary, defined by the iron pipes and measurements contained in the deed, instead of the natural shoreline, was the boundary of the Violantes' property. They assert that natural monuments are of greater value than artificial monuments in determining property boundaries.

{¶63} In *Broadsword v. Kauer*, 161 Ohio St. 524, 120 N.E.2d 111 (1954), cited by the Violantes, the Ohio Supreme Court held that, "[g]enerally, in determining boundaries, natural and permanent monuments are the most satisfactory evidence and control all other means of description, in the absence of which the following calls are resorted to, and generally in the order stated: First, natural boundaries; second, artificial marks; third, adjacent boundaries; fourth, course and distance * * *." *Id.* at 534.

{¶64} In the present matter, the court below evaluated the Violantes' deed and whether it defined their property as extending to the shoreline. The court determined that, under the deed, the property's boundary did not and was instead defined by the metes and bounds description contained in the deed, marked by iron pipes. This did not involve a determination by the trial court as to whether a shoreline boundary is preferable but, instead, whether the shoreline boundary was ever owned by the Violantes, pursuant to their deed. Since the deed in this case was unambiguous, there was no need to consider which boundaries are generally more favored. *See Haynes v.*

19

*Markel*, 4th Dist. No. 01CA2587, 2001 Ohio App. LEXIS 5599, *6-7 (Dec. 10, 2001) (applying the boundaries as stated in *Broadsword* when the deed was found to be ambiguous). In the present matter, the court could not consider which type of monument is more favored in determining what was explicitly conveyed in the language of the deed. To do so would be to nullify the language contained in the deed, contrary to the requirement that the court follow the language used by the parties in an unambiguous deed. *Alexander*, 53 Ohio St.2d at 246, 374 N.E.2d 146.

**{¶65}** *Rader v. Skeene*, 12th Dist. No. CA2008-01-001, 2008-Ohio-5666, also cited by the Violantes as requiring the court to set the boundary at the shoreline, is distinguishable because, in that case, the boundary issue was not related to the deed language, but to a separate dispute. *Id.* at ¶ 26-31. In the present matter, however, there was a clear and unambiguous boundary set in the deed.

**{¶66}** The fifth assignment of error is without merit.

**{¶67}** In their sixth assignment of error, the Violantes argue that even if their property did not extend to the shoreline under the deed, they obtained the right to use the land through adverse possession. They assert that they met the elements of adverse possession, since the prior owners had occupied the property to the shoreline, either through deeds allowing the use of such property, or through physical use of the shoreline.

**{¶68}** "Typically, appeals on adverse possession claims challenge the manifest weight of the evidence supporting the various elements of adverse possession." *Pottmeyer v. Douglas*, 4th Dist. No. 10CA7, 2010-Ohio-5293, ¶ 21. Under the civil manifest weight of the evidence standard, "[j]udgments supported by some competent,

20

credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**{¶69}** "To acquire title by adverse possession, the party claiming title must show exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years. * * * Failure of proof as to any of the elements results in failure to acquire title by adverse possession." *Grace v. Koch,* 81 Ohio St.3d 577, 579, 692 N.E.2d 1009 (1998)*.* "[O]ne who seeks title by adverse possession has the burden to prove such by clear and convincing evidence." *King v. Hazen*, 11th Dist. No. 2005-A-0031, 2006-Ohio-4823, ¶ 20.

**{¶70}** A review of the record shows that the Violantes failed to prove the elements of adverse possession by clear and convincing evidence. The only evidence related to the open and notorious use of the shoreline property was the testimony of Thomas Violante that he had rebuilt a preexisting, "old" retaining wall along the shoreline of his property. However, even if this were viewed as sufficient evidence of adverse possession by the Violantes, they did not possess the shoreline for the required 21 years, since they did not purchase the property until 2004. To succeed on this claim, they would also have to prove tacking.

**{¶71}** "Where there is privity between successive occupants * * * holding [land] continuously and adversely, such successive periods amounting to over 21 years, the occupations may be united or tacked to each other to make up the time of adverse holding." *Zipf v. Dalgarn*, 114 Ohio St. 291, 151 N.E. 174 (1926), paragraph two of the syllabus. In the present matter, there was no evidence regarding the continuous or

21

open elements as they related to specific use of the shoreline prior to the Violantes' ownership. The only evidence was the testimony of Thomas that the retaining wall on his shoreline was "old." However, there was no testimony as to how long the retaining wall had been on the property, that the prior owners had the wall there during a certain period of years, or as to the exact location of the wall on the property.

{¶72} The Violantes also argue that the owners or lessees of the property prior to the 1966 survey stated that the property's boundaries extended to the shoreline. However, such usage of the property cannot be considered adverse, since there was no evidence that the prior owners did not properly own the shoreline at that time. Based on the foregoing, the Violantes failed to prove the elements of adverse possession.

{¶73} The sixth assignment of error is without merit.

{¶74} In their seventh assignment of error, the Violantes argue that the trial court's decision resulted in an "unconstitutional taking by eminent domain" of their land and water rights without due process, given that the previous owners of their property had access to Brady Lake, based on their proximity to the shoreline. They assert that their rights as owners of property abutting a waterway cannot be taken away by the court under the circumstances of the present case.

{¶75} "Littoral rights are those ownership rights of a property owner whose land abuts a lake to the use and enjoyment of the waters of and the land underlying the lake." *Lemley v. Stevenson*, 104 Ohio App.3d 126, 133, 661 N.E.2d 237 (6th Dist.1995). Similarly, it has been found that an owner of land abutting a river owns the accompanying riparian rights unless they are specifically procured by another person.

22

*Mansfield v. Balliett*, 65 Ohio St. 451, 466-468, 63 N.E. 86 (1902); *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 56.

{¶76} Regarding eminent domain, which the Violantes assert is applicable in this case, it is defined as "[t]he inherent power of a governmental entity to take privately owned property, esp[ecially] land, and convert it to public use, subject to reasonable compensation for the taking." *Black's Law Dictionary* 562 (8th Ed.1999).

{¶77} In the present matter, there are several reasons why the trial court's ruling does not constitute an unconstitutional taking of the Violantes' asserted water rights through eminent domain. First, the court did not take the Violantes' property and convert it into public property, as occurs under the definition of eminent domain. The court instead simply held that the Violantes did not own certain property, i.e, the shoreline, under their deed. There was no property for the court to take, since the Violantes never owned such property under their deed. While the trial court may have reached the conclusion that the Village owned the property the Violantes believed had belonged to them, this does not amount to a taking under these circumstances.

{¶78} In addition, the assertion that the Violantes were deprived of water rights based on the court's determination is also incorrect because the trial court did not take away any existing water rights. Under the trial court's interpretation, as well as this court's interpretation, the Violantes never had such rights to take away. *See State ex rel. Gilbert v. Cincinnati*, 125 Ohio St.3d 385, 2010-Ohio-1473, 928 N.E.2d 706, ¶ 19 (in order to establish a claim for a taking, the appellants must establish that they possess a property interest to be protected). Their land does not extend to the shoreline, as

discussed above, and cannot be found to abut water. Since their land does not abut water, as required in the foregoing cases, they did not have the asserted water rights.

{¶79} The seventh assignment of error is without merit.

{¶80} For the foregoing reasons, the Order and Journal Entry of the Portage County Court of Common Pleas, adopting the Magistrate's Order dismissing the Violantes' Complaint, ruling in favor of the defendants on their counterclaims and issuing a permanent injunction against the Violantes, is affirmed. Costs to be taxed against appellant.


MARY JANE TRAPP, J.,

THOMAS R. WRIGHT, J.,

concur.