NOT RECOMMENDED FOR PUBLICATION
File Name: 04a0077n.06
Filed: November 10, 2004

No. 03-4277

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MONTICELLO INSURANCE COMPANY, )
                                              )
        Plaintiff-Appellee,                   )
                                              )
v.                                            )    ON APPEAL FROM THE UNITED
                                              )    STATES DISTRICT COURT FOR THE
ELBERT LEE HALE, RALPH A. BOWERS,)                 SOUTHERN DISTRICT OF OHIO
CHRIS REMOR, AND SPANKY'S DOLL)
HOUSE                                         )
                                              )    OPINION
        Defendants-Appellants.                )
                                              )

        **Before: KENNEDY and GILMAN, Circuit Judges; and HOOD, District Judge.**[*]

        **RONALD LEE GILMAN, Circuit Judge.** In February of 2001, one patron fatally shot

another at Spanky's Doll House, a bar located in Dayton, Ohio. The mother of the decedent brought

a state-court action against the bar, its owners, and the manager (collectively Spanky's). Monticello

Insurance Company, which provided liability insurance to Spanky's, then sought a declaratory

judgment in federal court, asking that the company be relieved of any duty to defend or indemnify

Spanky's for claims arising out of the shooting. The district court concluded that Monticello had

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

-1-

no obligation under its policy to defend Spanky's against litigation arising from assault and battery claims.

Spanky's argues on appeal that the assault and battery exclusion is ambiguous because it does not clearly exclude assaults carried out by bar patrons as opposed to bar employees. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

**A.      Factual background**

In June of 2000, Monticello issued a Commercial Liquor Liability Policy to Spanky's Doll House. The policy was subject to numerous limitations and exclusions, including a statement that the insurance did not apply to "'[i]njury' expected or intended from the standpoint of the insured," and an "Assault and Battery Amendatory Endorsement," which provided that

> [t]his insurance does not apply to actions and proceedings to recover damages for bodily injuries or property damages arising from the following are [sic] excluded form [sic] coverage: [sic] and the company is under no duty to defend or to indemnify      an insured in any such action or proceeding arising from the following:

> 1.      Assault;
> 2.      Battery;
> 3.      Harmful or offensive contact between or among two or more persons[.]

> . . .

> Regardless or [sic] degree of culpability or intent and without regard to:

> A.      Whether the acts are alleged to be or [sic] at the instruction or at the direction of the insured, his officers, employees, agents, or servants; or by any otherwise [sic] on, at or near premises owned or occupied by the insured; or any other person[.]

B.       The alleged failure of the Insured, or his officers, employees, agents or servants in the hiring, supervision, retention or control of any person whether or not an officer, agent, or servant of the Insured.

C.       The alleged failure of the Insured or his officers, employees, agents or servants to attempt to prevent, bar, or halt any such conduct.

In February of 2001, while this policy was in effect, 19-year-old Eric Colter was fatally shot by Timothy Hannah in a brawl at Spanky's. Hannah was another patron of the bar, not an employee. Colter's mother, Veneta Colter, brought a state-court action against Spanky's, alleging both common law and statutory negligence, and refiled a similar complaint after the first one was dismissed. Specifically, she alleged that the bar was negligent in admitting her underage son, allowing Hannah and his cohorts to behave in a manner likely to lead to violence, and ultimately allowing a brawl to occur.

**B.       Procedural background**

After Colter's mother filed the initial state-court action, Monticello filed the present declaratory judgment action in federal court and moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The district court had jurisdiction based upon diversity of citizenship, and both parties agree that the insurance policy is governed by Ohio law. In response to the federal suit by Monticello, Spanky's filed a counterclaim, seeking a declaratory judgment that the assault and battery exclusion was ambiguous and that Monticello had violated the terms of the policy by failing to provide coverage. The counterclaim filed by Spanky's also sought attorney fees and expenses, as well as punitive damages in the amount of $50,000 for Monticello's alleged bad-faith refusal to provide coverage.

Holding that the Assault and Battery Amendatory Endorsement "clearly and unambiguously excludes from coverage claims arising out of assault and battery," and specifically noting that all of the claims against Spanky's fall within the Endorsement, the district court sustained Monticello's motion for judgment on the pleadings and overruled Spanky's motion. This timely appeal followed.

## II. ANALYSIS

**A.      Standard of review**

This court reviews de novo a district court's grant of a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001). In reviewing such a motion, the court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 746 (6th Cir. 2004). A district court's determination of state law is also reviewed de novo. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991) (holding that "[t]he obligation of responsible appellate jurisdiction implies the requisite authority to review independently a lower court's determinations" of state law).

**B.      The district court did not err when it granted Monticello's motion for judgment on the pleadings**

*1.      Interpretation of insurance contracts under Ohio law*

Under Ohio law, questions regarding the extent of coverage provided by an insurance policy "are determined, in the first instance, by an examination of the relevant insurance documents,

utilizing therein the familiar rules of construction and interpretation applicable to contracts generally." *Gomolka v. State Auto. Mut. Ins. Co.*, 436 N.E.2d 1347, 1348 (Ohio 1982) (holding that an ambiguous automobile insurance policy provided underinsured motorist coverage); *see also Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 597 N.E.2d 1096, 1102 (Ohio 1992) (noting that the Ohio Supreme Court "has consistently held that insurance contracts must be construed in accordance with the same rules as other written contracts"). Where the language is clear and unambiguous, courts "must enforce the contract as written and give the words their plain and ordinary meaning." *Cincinnati Indem. Co. v. Martin*, 710 N.E.2d 677, 679 (Ohio 1999) (upholding a declaratory judgment that a homeowners' insurer had no duty to defend the insured in a wrongful death suit).

Language reasonably susceptible to more than one interpretation, however, is "construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988) (discussing Ohio's "well-settled" *contra proferentem* rule). Ohio courts have strongly emphasized this rule in the interpretation of exclusions from liability. *See United States Fid. & Guar. Co. v. Lightening Rod Mut. Ins. Co.*, 687 N.E.2d 717, 719 (Ohio 1997) (noting the long-standing rule in Ohio that "an exclusion from liability must be clear and exact in order to be given effect") (quotation marks omitted).

### 2.        *The Assault and Battery Amendatory Endorsement*

Spanky's claims that the Assault and Battery Amendatory Endorsement is "ambiguous and unenforceable because it does not clearly exclude claims based upon assaults committed by third parties that are not 'expected of [sic] intended' from the standpoint of the insureds." But no

plausible interpretation favoring Spanky's is evident on the face of the insurance policy, and none is suggested by the opinions of the Ohio courts that have interpreted similar policies.

As noted by the district court, "the parties agree that the Endorsement is comprised of three sections." The first section states that the policy does not apply to actions to recover damages arising from a list of three types of behavior. In the second section, the Endorsement notes three particular circumstances that have no effect on whether the policy applies. Derivative and contingent claims are addressed by the third section, which lists three particular types of claims that the policy does not cover. Spanky's, however, does not rely on the third section in support of its claim for coverage.

### a. *The first section*

The heading of the first section of the Endorsement contains several typographical errors, and is grammatically garbled, but neither the typographical errors nor the grammatical mistakes create any doubt about the two central ideas expressed in this section of the text. First, "[t]his insurance does not apply to actions and proceedings to recover damages for bodily injuries or property damage arising from" any of the categories included in the list under the heading of the first section. Second, Monticello "is under no duty to defend or to indemnify an insured in any such action or proceeding arising from" one of the listed categories. The policy's statement that "the following are excluded form [sic] coverage" is redundant, as it expresses the same idea as the clause to which it is ungrammatically appended. Next is the list of behaviors after the heading: "Assault," "Battery," and "Harmful or offensive contact between or among two or more persons." For this reason, the only plausible reading of the text of the first section is that no action to recover for bodily

injury or property damage arising from assault, battery, or harmful contact between two or more persons is covered by the policy.

As noted by the district court, cases in which the Ohio courts have interpreted similar language support this reading. *See Negron v. Odeon Concert Club, Inc.*, No. 73156, 1998 WL 229498, at *2-3 (Ohio Ct. App. May 7, 1998) (unpublished) (holding that claims arising from the trampling of a bar patron during a brawl were excluded by a policy that denied coverage for "claims or suits to recover damages for bodily injury or property damage arising from actual or alleged assault and/or battery," and defined assault as "harmful . . . contact between . . . two or more persons"); *see also Schneider v. Northland Ins. Co.*, No. C-980791, 1999 WL 728540, at *2 (Ohio Ct. App. Sept. 17, 1999) (unpublished) (holding that claims arising from an assault committed by a bar employee were excluded under policy language providing that the insurance company was "not liable for injuries 'arising out of assault and battery or out of any act or omission' resulting in an assault and battery"); *Sphere Drake Ins. Co. v. Ross*, 609 N.E.2d 1284, 1285-86 (Ohio Ct. App. 1992) (holding that the plaintiff's claim that a bar was negligent in hiring the security staff who allegedly assaulted him was excluded by an insurance policy that denied coverage for "bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts").

The exclusion in the key case relied upon by Spanky's, in contrast, contained less precise language. *See Liquor Liab. Joint Underwriting Ass'n v. Hermitage Ins. Co.*, 644 N.E.2d 964, 966 (Mass. 1995) (holding that an insurance policy providing coverage for injuries caused by "an accident . . . which results in bodily injury or property damage neither expected nor intended from

the point of view of the insured," together with a proviso that "[a]ssault and/or battery shall not be deemed an accident," did not exclude an assault by a third party). Furthermore, as the Supreme Judicial Court of Massachusetts noted, the endorsements issued by Hermitage after this assault were "much more precise with respect to excluded coverage," containing language resembling the policy in the present case: "[T]his insurance does not apply to bodily injury or property damage arising or alleged to arise out of . . . [a]n assault and/or battery caused by or at the instigation or direction of . . . the insured, his agent or employee[,] . . . any patron of the insured[,] or . . . any other person." *Id*. at 967-68, n.5 (quotation marks omitted). The contrast between the policy language at issue in *Liquor Liability* and the language at issue here, as well as the *Liquor Liability* court's own description of language resembling Monticello's as "much more precise," *id*., both support the conclusion that the language in the first section is not ambiguous.

### b.    The second section

In the second section, the phrase "[r]egardless or [sic] degree of culpability or intent and without regard to:" is followed by a list of three possible attributes of the underlying claim. The first attribute is again quoted in full:

> A.    Whether the acts are alleged to be or [sic] at the instruction or at the direction of the insured, his officers, employees, agents, or servants; or by any [sic] otherwise on, at or near premises owned or occupied by the insured; or any other person[.]

The district court accepted the contention of Spanky's that this second section contained an ambiguity, based on the argument that the position of "or any other person" in the sentence

suggested that it applied only to the immediately preceding phrase "premises owned or occupied by the insured."

Although the district court was correct in its ultimate conclusion that the policy did not provide coverage for Spanky's, we disagree with its analysis of Paragraph A's alleged ambiguity. The "or any other person" language does appear at the end of the sentence, but it is part of a list, with each item separated by a semicolon. These listed items, each of which is a potential completion for the phrase "at the instruction or at the direction of" are (1) "the insured, his officers, employees, agents or servants," (2) "any [sic] otherwise on, at or near premises owned or occupied by the insured," and (3) "any other person." "[B]y," as used at the beginning of the second item in the list, appears to be surplusage, but even if it is not, its only logical interpretation reinforces the idea that the three items separated by semicolons are items in a list, each of which is linked to the original phrase. In spite of a number of grammatical errors, then, the logical scheme of Paragraph A is evident, and no alteration of the text is required to see that "any other person" is the third item in a list of possible actors.

The only ambiguity we see in the second section is determining the subject of the two prepositional phrases at the beginning ("Regardless or [sic] degree of culpability or intent" and "without regard to"). *Something* is true "without regard to . . . whether the acts are alleged to be . . . at the direction of . . . any other person," but what? There are only two plausible answers to this question, and neither suggests that the policy covers Colter's claims against Spanky's. One answer —the most reasonable—is that the second section of the Endorsement simply amplifies the first section, in which case it simply means that the broad exclusion for claims arising from assault

applies "without regard to . . . whether the acts are alleged to be . . . at the direction of . . . any other person."

The only other plausible answer is that the "regardless of" and "without regard to" phrases modify nothing, making the entire second section of the Endorsement unintelligible. But even if that were the case, the broad exclusion of the first section would still apply, and Spanky's would be unable to argue that the second section modified or limited the first. In sum, whether Paragraph A indicates that the policy specifically excludes claims for assaults committed by "any other person," or simply leaves in place the first section's comprehensive exclusion of assault-based claims, it does not lend itself to any plausible interpretation under which Colter's claims against Spanky's would be covered.

The exclusions upheld in *Negron* and *Sphere Drake* provide further support for this conclusion, as both contained language similar to Paragraph A. *See Negron v. Odeon Concert Club, Inc.*, No. 73156, 1998 WL 229498, at \*2-3 (Ohio Ct. App. May 7, 1998) (unpublished) (upholding an exclusion that "the Company is under no duty to defend or indemnify an insured regardless of the degree of culpability or intent and without regard to . . . [w]hether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents or servant; or by any other person lawfully or otherwise on, at or near premises owned or occupied by the insured or by any other person"); *Sphere Drake Ins. Co. v. Ross*, 609 N.E.2d 1284, 1285 (Ohio Ct. App. 1992) (upholding an exclusion for claims arising from assault and battery "whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person").

Spanky's arguments as to Paragraphs B and C are equally unavailing. To the extent that Paragraph B is relevant at all, it harms Spanky's case by indicating that the parties responsible for assaults can be individuals other than officers, employees, agents, and servants of the insured. The relevant language in Paragraph B provides that the exclusion applies "without regard to . . . the alleged failure of the Insured . . . in the hiring, supervision, retention or control of any other person whether or not an officer, agent, or servant of the insured." As to Paragraph C, the district court correctly noted that it also undermines Spanky's case, because it declares that the exclusion applies without regard to the failure of the insured to prevent or halt the conduct that gives rise to the claim. *Id.*

We therefore agree with the district court's conclusion that the Endorsement excludes claims based on bodily injury and property damages for assault. Because Colter's complaints, both statutory and common law, fall within the Endorsement, Monticello has no duty to defend Spanky's against Colter's lawsuit, nor any obligation to pay any damages arising therefrom.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.