[Cite as *Wright v. Larschied*, 2014-Ohio-3772.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

MATTHEW WRIGHT, ET AL.,

    PLAINTIFFS-APPELLEES,             CASE NO.  1-14-02

    v.

HARRY LEE LARSCHIED,
INDIVIDUALLY AND D.B.A., HARRY'S
HIDE A WAY & PATIO,                O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CV 2013 0100

Judgment Affirmed

Date of Decision:    September 2, 2014

APPEARANCES:

    *Robert B. Fitzgerald* for Appellant

    *Michael M. Neltner* for Appellee, The Cincinnati Specialty
        Underwriters Insurance Company

**PRESTON, J.**

**{¶1}** Defendant-appellant, Harry Lee Larschied ("Larschied"), individually and doing business as Harry's Hide A Way & Patio ("Harry's Hide A Way"), appeals the judgment entry of the Allen County Court of Common Pleas granting summary, declaratory judgment in favor of intervening plaintiff-appellee, The Cincinnati Specialty Underwriters Insurance Company ("CSU"). In its judgment entry, the trial court concluded that under the Commercial General Liability policy issued by CSU to Larschied, policy number CSU0013833 ("CGL Policy"), CSU did not have a duty to defend Larschied in a suit brought against Larschied and others by two patrons of Harry's Hide A Way, a bar owned and operated by Larschied. For the reasons that follow, we affirm.

**{¶2}** On February 12, 2013, plaintiffs-appellees, brothers Matthew Wright and Jeremy Wright (collectively, the "Wrights"), filed a "complaint for personal injuries" against Larschied and ten John Does whose names were unknown to the Wrights. (Doc. No. 1).[1] The case was assigned case number CV 2013 0100. (*Id.*). In their complaint, the Wrights alleged that they were "attacked and struck by Patrons" at Harry's Hide A Way, resulting in "severe injuries" that "required significant medical treatment" on June 27 and 28, 2012. (*Id.*, ¶ 11, 16). The

---

[1] Unless otherwise noted, document references in this opinion are to case number CV 2013 0100.

Wrights' complaint contained three causes of action: "negligence," "violation of policy, practice or custom," and "failure to supervise." (*Id.*).

**{¶3}** On March 1, 2013, Larschied filed his answer to the Wrights' complaint. (Doc. No. 3).

**{¶4}** On June 12, 2013, CSU filed a "complaint for declaratory judgment" against Larschied, the Wrights, and the ten John Does whose names were unknown to CSU. (Case No. CV 2013 0409, Doc. No. 1). The case was assigned case number CV 2013 0409. (*Id.*). In its complaint, CSU sought a declaration that under the CGL Policy, CSU had no duty to defend or indemnify Larschied as a result of the allegations made by the Wrights in case number CV 2013 0100. (*Id.*).

**{¶5}** On August 8, 2013, Larschied filed his answer to CSU's complaint. (Case No. CV 2013 0409, Doc. No. 9).

**{¶6}** On September 18, 2013, the trial court granted CSU's motion to consolidate case number CV 2013 0409 with case number CV 2013 0100 and ordered that all future filings be made in case number CV 2013 0100. (Case No. CV 2013 0409, Doc. No. 11); (Doc. No. 34).

**{¶7}** On September 26, 2013, the Wrights filed their answer to CSU's complaint. (Doc. No. 36).

**{¶8}** On October 7, 2013, CSU filed a motion for summary judgment, arguing that because the causes of action in the Wrights' complaint stemmed from

an assault and battery, an endorsement to the CGL Policy, titled "EXCLUSION – ASSAULT OR BATTERY," barred coverage. (Doc. No. 38); (CGL Policy, Doc. No. 38, Ex. C, Ex. 1). Therefore, CSU argued, it had no duty to defend or indemnify Larschied. (*Id.*).

{¶9} On December 12, 2013, Larschied filed his memorandum contra CSU's motion for summary judgment. (Doc. No. 51). In it, he argued that the language of the assault-or-battery exclusion "is at best ambiguous as to whether Mr. Lane's [sic] claims are covered under the policy." (*Id.*). Larschied also argued that concluding the claims were not covered under the CGL Policy would render the CGL Policy illusory. (*Id.*).

{¶10} On December 23, 2013, CSU filed its reply memorandum in support of its motion for summary judgment. (Doc. No. 54).

{¶11} On January 9, 2014, the Wrights filed a "counter motion in summary judgment," opposing CSU's motion for summary judgment and arguing that the CGL Policy's assault-or-battery exclusion did not apply to the Wrights' causes of action. (Doc. No. 58).

{¶12} On the morning of January 16, 2014, CSU filed a "memorandum in support of motion for summary judgment and reply to counter motion of plaintiffs." (Doc. No. 59).

-4-

{¶13} On the afternoon of January 16, 2014, the trial court filed its judgment entry granting summary, declaratory judgment in favor of CSU. (Doc. No. 60). In its judgment entry, the trial court reasoned that "[t]he assault-and-battery exclusion in the endorsement obviated any duty on the part of the insurer to defend against or to cover any damages that arose from this altercation at Harry's Hide A Way." (*Id.*). The trial court also found, "pursuant to Civ. R. 54(B), that there is no just reason for delay." (*Id.*).

{¶14} On February 10, 2014, Larschied filed his notice of appeal. (Doc. No. 61). He raises two assignments of error for our review.

### Assignment of Error No. I

**The trial court erred in granting the plaintiff/appellee's motion for summary judgment when it ruled that the assault or battery endorsement "obviated any duty on the part of the insurer to defend against or to cover any damages that arose from the subject altercation at Harry's Hide A Way." (See judgment entry of trial court filed Jan. 16, 2014, p. 6.)**

{¶15} In his first assignment of error, Larschied argues that the trial court erred when it concluded in its judgment entry granting summary, declaratory judgment that CSU did not have a duty to defend Larschied in the Wrights' suit because the CGL Policy's assault-or-battery exclusion barred coverage. Specifically, Larschied argues that CSU has a duty to defend him because the Wrights' complaint alleges negligence against Larschied and because the Wrights' allegations of "violation of policy, practice or custom" and "deliberate

-5-

indifference to the rights of citizens" against Larschied are not expressly excluded by the assault-or-battery exclusion.

**{¶16}** We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

**{¶17}** The issue presented by Larschied's first assignment of error is whether, based on the allegations in the Wrights' complaint, CSU has a duty to defend Larschied under the CGL Policy in the Wrights' suit. The CGL Policy's "Commercial General Liability Coverage Form" ("CGL Coverage Form") explains the duties CSU owes to its insured. The "**Insuring Agreement**" set forth in a subsection titled "**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**" to "**SECTION I – COVERAGES**" of the CGL Coverage Form provides, in part:

> [CSU] will pay those sums that the insured becomes legally
>
> obligated to pay as damages because of "bodily injury" or "property
>
> damage" to which this insurance applies. [CSU] will have the right

and duty to defend the insured against any "suit" seeking those damages. However, [CSU] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Capital and bold emphasis sic.) (CGL Policy at CGL Coverage Form, 1).[2]

{¶18} The CGL Policy includes "endorsements" that add new provisions to and modify, delete, and replace existing provisions of the CGL Coverage Form. The assault-or-battery exclusion at issue in this case provides, in relevant part:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE**

**READ IT CAREFULLY.**

**EXCLUSION – ASSAULT OR BATTERY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.** The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability**:

**a.** This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of:

---

[2] The named insured under the CGL Policy is "Harry Larschied dba Harry's Hideaway," and the parties do not dispute that Larschied is an "insured" under the CGL Policy "with respect to the conduct of" Harry's Hide A Way. (CGL Policy at Declarations and CGL Coverage Form, 9).

**(1)** An actual or threatened assault or battery whether caused by or at the instigation or direction of any insured, their employees, patrons or any other person;

**(2)** The failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery; or

**(3)** The negligent:

**(a)** Employment;

**(b)** Investigation or reporting or failure to report any assault or battery to proper authorities;

**(c)** Supervision;

**(d)** Training;

**(e)** Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph **a.** above.

**B.** For the purpose of this endorsement the words assault and battery are intended to include, but are not limited to, sexual assault.

(Capital and bold emphasis sic.) (CGL Policy, Form CSGA 301 01 08).

**{¶19}** "'An insurance policy is a contract whose interpretation is a matter of law.'" *King Estate v. Wachauf*, 3d Dist. Auglaize No. 2-12-10, 2013-Ohio-2498, ¶ 8, quoting *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St.3d 306,

2007-Ohio-4917, ¶ 7. "The coverage under an insurance policy is determined by construing the contract 'in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed.'" *Allstate Ins. Co. v. Eyster*, 189 Ohio App.3d 640, 2010-Ohio-3673, ¶ 17 (3d Dist.), quoting *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 211 (1988). "'When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.'" *Wachauf* at ¶ 8, quoting *CPS Holdings, Inc.* at ¶ 7. "A contract is unambiguous as a matter of law if it can be given a definite legal meaning." *Id.*, citing *CPS Holdings, Inc.* at ¶ 7. Ambiguity in an insurance policy is construed against the insurer and in favor of the insured; however, a court will not apply this rule if it results in an unreasonable interpretation of the words of the policy. *Id.* at ¶ 9, citing *CPS Holdings, Inc.* at ¶ 8.

{¶20} The duty of an insurer to defend an action against an insured is broader than the duty to indemnify. *Beaverdam Contracting v. Erie Ins. Co.*, 3d Dist. Allen No. 1-08-17, 2008-Ohio-4953, ¶ 20, citing *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, ¶ 19. "The duty to defend arises when a complaint alleges a claim that could be covered by the insurance policy." *CPS Holdings, Inc.* at ¶ 6, citing *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, ¶ 13. "The duty to defend is determined by the

scope of the allegations in the complaint." *Ward v. United Foundries, Inc.*, 129 Ohio St.3d 292, 2011-Ohio-3176, ¶ 19, citing *Harrison* at ¶ 19.

**{¶21}** "'[When] the complaint brings the action within the coverage of the policy, the insurer is required to make the defense, regardless of the ultimate outcome of the action or its liability to the insured.'" *Beaverdam Contracting* at ¶ 20, quoting *Motorists Mut. Ins. Co. v. Trainor*, 33 Ohio St.2d 41 (1973), paragraph two of the syllabus. "Even when the action is not clearly within the policy coverage, but the allegations could arguably or potentially state a claim within the policy coverage, the insurer still has a responsibility to defend the entire action." *Id.*, citing *Sanderson v. Ohio Edison Co.*, 69 Ohio St.3d 582, 586 (1994) and *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177 (1984).

**{¶22}** "However, where an insurance contract excludes coverage for the claim against the insured, no duty to defend will arise." *Id.* at ¶ 21, citing *Zanco v. Michigan Mut. Ins. Co.*, 11 Ohio St.3d 114, 116 (1984). "In such cases, there is no duty to defend because the allegations in the pleadings fall squarely within an area of activity specifically excluded from coverage." *Id.*, citing *Zanco* at 116. "Only if there is no possibility of coverage under the policy based on the allegations in the complaint will the insurer not have a duty to defend the action." *Id.* at ¶ 20, citing *Erie Ins. Exchange v. Colony Dev. Corp.*, 136 Ohio App.3d 406, 413 (10th Dist.1999).

**{¶23}** "Furthermore, when an insurance contract contains exceptions to coverage, there is a presumption that all coverage applies unless it is clearly excluded in the contract." *Eyster*, 189 Ohio App.3d 640, at ¶ 19, citing *Bosserman Aviation Equip., Inc. v. U.S. Liab. Ins. Co.*, 183 Ohio App.3d 29, 2009-Ohio-2526, ¶ 11 (3d Dist.). In other words, "an exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." (Emphasis sic.) *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665 (1992). "'Accordingly, in order for an insurer to defeat coverage through a clause in the insurance contract, it must demonstrate that the clause in the policy is capable of the construction it seeks to give it, and that such construction is the only one that can be fairly placed upon the language.'" *Eyster* at ¶ 19, quoting *Bosserman Aviation Equip., Inc.* at ¶ 11.

**{¶24}** The allegations in the Wrights' complaint are based on an alleged incident in which they were "attacked and struck by Patrons" while at Harry's Hide A Way. Under the Wrights' first count, "negligence," they allege that Larschied's negligence, in multiple respects, resulted in the injuries the Wrights sustained after being attacked and struck. Specifically, the Wrights allege in their first count:

> 5. At all times relevant herein, Defendant Larschied and/or Harry's provided various services including, but not limited to, dispensing of

alcoholic beverages for consumption and other social activities for his patrons/invitees therein.

6. On June 27th and 28th 2012, Defendant Harry's was open for business to its patrons/invitees.

7. At all relevant times mentioned herein, Defendant Larschied and/or Harry's, his agents, apparent agents, employees, servants and/or any other personnel involved in providing services to or security on behalf of his patrons/invitees were acting within the scope of their agency or employment.

8. At all times relevant on June 27th and 28th 2012, it was foreseeable by the agents, apparent agents, employees, servants, and/or any other personnel involved in providing services to or security on behalf of the patrons of Defendant Larschied and/or Harry's that his patrons/invitees would be at risk for injury from violent acts of third parties within his premises.

9. During the relevant time period on June 27th and 28th 2012, Defendant Larschied and/or Harry's, by and through his agents, apparent agents, employees, servants, and/or any other personnel involved in providing services to or security on behalf of the

patrons/invitees knew or should have known that Plaintiffs were at risk for injury.

10. Plaintiffs were at all times relevant herein invitees of Larschied and/or Harry's.

11. On or about February 27, 2012 [sic], Plaintiffs were attacked and struck by Patrons ("Patrons") while at Harry's.

12. Plaintiffs' attack by Patrons was unprovoked, as Plaintiffs did not consent to Patrons' conduct or being touched.

13. Defendant Larschied and/or Harry's, his agents, apparent agents, employees, servants and/or other personnel involved in providing services to or security on behalf of his invitees had knowledge of prior similar incidents that made the Patrons' actions foreseeable.

14. At all relevant times mentioned herein, Defendant Larschied and/or Harry's had a duty to exercise ordinary care and provide a safe hazard free environment for his patrons/invitees and to ensure his patrons/invitees were not at risk for injury.

15. At all relevant times mentioned herein, Defendant Larschied and/or Harry's, through its agents, apparent agents, employees, servants and/or any other personnel involved in providing services to, or security on behalf of his patrons/invitees, including Plaintiffs,

breached his duty and was negligent in one or more of the following respects:

a.     Failed to provide for the safety and security of his invitees, including Plaintiffs, when he knew or should have known there was a substantial risk of harm to his patrons/invitees, including Plaintiffs;

b.     Failed to reasonably safeguard his invitees, including Plaintiffs, from injury;

c.     Failed to protect his invitees, including Plaintiffs, from criminal acts of third parties;

d.     Failed to provide adequate security on his premises to ensure the safety and security of his invitees, including Plaintiffs;

e.     Failed to exercise ordinary care in general and to Plaintiffs. [sic]

f.     Failed to comply with applicable laws set forth by the State of Ohio and the City of Lima and the regulations promulgated therein for business establishments similar to that of Harry's;

g.     Was otherwise careless and negligent.

16.  As a direct and proximate result of one or more of the aforesaid negligent and careless acts and/or omissions by the Defendant Larschied and/or Harry's, Plaintiffs Matthew and Jeremy Wright

sustained severe injuries which required significant medical treatment on June 27th and June 28th 2012.

(Doc. No. 1). Under their second count, "violation of policy, practice or custom," the Wrights allege that Larschied failed to implement and train his employees concerning "policies, practices, and customs to protect the rights of citizens." Specifically, the Wrights allege in their second count:

18. Defendant Larschied, as owner and operator of Harry's, has developed and maintained policies, practices, and customs demonstrating a deliberate indifference to the rights of citizens.

19. Defendant Larschied, as owner and operator of Harry's, has failed to implement policies, practices, and customs to protect the rights of citizens. As a result, the employees working security at Harry's have been inadequately trained in the proper duty of care owed to patrons.

20. Such policies, practices and customs have caused Plaintiffs to suffer a loss of their right to be free from assault and battery committed against him [sic] and resultant physical injury by Defendants John Does 1 through 10, inclusive.

(*Id.*).   Under their third count, "failure to supervise," the Wrights allege that Larschied failed to "guard against the conduct of Patrons."   Specifically, the Wrights allege in their third count:

24.  Defendant Larschied, as owner and operator of Harry's, knew, or in the exercise of due diligence should have known, that the conduct of Patrons was likely to occur.

25.  Defendant Larschied, as owner and operator of Harry's, failed to take any preventative or remedial measures to guard against the conduct of Patrons.

26.   Defendant Larschied's failure to take preventative measures deprived Plaintiffs of their right to be free from an unreasonable seizure, assault and battery committed against him [sic] by Patrons.

(*Id.*).

{¶25} In support of his argument that CSU has a duty to defend him under the CGL Policy, Larschied argues that the Wrights' "negligence" allegation is covered by the CGL Policy.  He also argues that the Wrights' "violation of policy, practice or custom" and "deliberate indifference to the rights of citizens" allegations are not allegations of "assault or battery," nor are they expressly excluded by the CGL Policy.  In other words, the allegations *against Larschied* are not assault or battery—rather, the allegations against him include "negligence,"

"violation of policy, practice or custom," and "deliberate indifference to the rights of citizens." Therefore, Larschied argues, based on the Wrights' allegations against him, the assault-or-battery exclusion does not bar coverage, and CSU has a duty to defend him in the Wrights' suit.

{¶26} CSU argues, on the other hand, that it is clear from the allegations in the Wrights' complaint that their suit stems from an assault or battery, in which case there is no coverage based on the CGL Policy's assault-or-battery exclusion. In other words, the assault-or-battery exclusion is not concerned with the specific claims and allegations against Larschied so long as those claims and allegations arise out of an assault or battery. Therefore, CSU argues, because the counts and allegations against Larschied—however phrased—stem from, or arise out of, an assault or battery at Harry's Hide A Way, the CGL Policy's assault-or-battery exclusion excludes coverage, and CSU has no duty to defend Larschied.

{¶27} One provision of the assault-or-battery exclusion, Section A.a.(1), is dispositive in this case. That portion of the exclusion states that insurance under the CGL Policy "does not apply to 'bodily injury,' * * * arising out of * * * [a]n actual or threatened assault or battery * * *." (CGL Policy, Form CSGA 301 01 08). The CGL Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (CGL Policy at CGL Coverage Form, 13). The CGL Policy does not define

"arising out of," "assault," or "battery," among other terms in the assault-or-battery exclusion. The phrase "arising out of" suggests the necessity for a causal relationship or causal connection. *See Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St.3d 227, 2003-Ohio-3373, ¶ 41; *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, ¶ 20. The tort of "assault is the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." *Stafford v. Columbus Bonding Ctr.*, 177 Ohio App.3d 799, 2008-Ohio-3948, ¶ 15 (10th Dist.), citing *Smith v. John Deere Co.*, 83 Ohio App.3d 398, 406 (10th Dist.1993). *See also Hilgefort v. Stewart*, 3d Dist. Shelby No. 17-10-13, 2011-Ohio-253, ¶ 12. "Battery is an intentional contact with another that is harmful or offensive." *Stafford* at ¶ 15, citing *Love v. Port Clinton*, 37 Ohio St.3d 98, 99 (1988). *See also Hilgefort* at ¶ 12.

{¶28} Therefore, the assault-or-battery exclusion clearly and unambiguously excludes from coverage injury to one's person (i.e. "bodily injury") resulting from (i.e. "arising out of") an actual or threatened assault or battery. The assault-or-battery exclusion applies to *any* bodily injury arising out of an assault or battery. It does not matter, for example, how the assault or battery occurred or who may or may not have contributed to its occurrence. *See Carter v. Adams*, 173 Ohio App.3d 195, 2007-Ohio-4322, ¶ 28-29 (1st Dist.). At most, the second phrase of Section A.a.(1) of the assault-or-battery exclusion—"whether

caused by or at the instigation or direction of any insured, their employees, patrons or any other person"—simply "amplifies" the broad exclusion of *any* bodily injury arising out of an actual or threatened assault or battery. *Monticello Ins. Co. v. Hale*, 114 Fed.Appx. 198, 203-204 (6th Cir.2004). *See also Colter v. Spanky's Doll House*, 2d Dist. Montgomery No. 21111, 2006-Ohio-408, ¶ 48-62, citing *Hale*.

**{¶29}** Like the second phrase of Section A.a.(1) of the assault-or-battery exclusion, Section A.a.(2) at best "amplifies" the broad exclusion found in the first phrase of Section A.a.(1). Section A.a.(2) states that insurance under the CGL Policy "does not apply to 'bodily injury,' * * * arising out of * * * [t]he failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery * * *." (CGL Policy, Form CSGA 301 01 08). When the allegations in a claimant's complaint make clear that the cause of the injuries for which the claimant is seeking damages is an assault or battery, coverage under the CGL Policy is barred because the excluded act of assault and battery caused the claimant's injuries. *See Carter* at ¶ 29 ("Even though the complaint contained allegations of negligent hiring, failure to warn, and failure to provide adequate security, coverage under the policy was barred because the excluded act of assault and battery was the immediate cause of the injuries that gave rise to the allegations of negligence."). *See also Hale* at 203-204. In other

words, based on the CGL Policy's broad exclusion of *any* bodily injury arising out of an actual or threatened assault or battery, whether the insured failed to prevent or suppress an assault or battery is irrelevant if the claimant is attempting to recover for injuries caused by the assault or battery. *See Colter* at ¶ 41 ("[The assault-or-battery exclusion's] plain language precludes coverage for *any* bodily injury claim or suit arising out of or related to *any* assault or battery. We see no ambiguity in this language." (Emphasis sic.)).

{¶30} In their complaint, the Wrights allege that they "sustained severe injuries which required significant medical treatment on June 27th and June 28th 2012." (Doc. No. 1, ¶ 16). They allege that they sustained these injuries when they "were attacked and struck by Patrons ("Patrons") while at Harry's." (*Id.*, ¶ 11). The Wrights also allege that the "attack by Patrons was unprovoked, as Plaintiffs did not consent to Patrons' conduct or being touched." (*Id.*, ¶ 12). At no fewer than two points in their brief, the Wrights refer to the "assault and battery" committed against them by patrons at Harry's Hide A Way. (*Id.*, ¶ 20, 26). Based on these allegations, it is clear that the Wrights are attempting to collect damages for bodily injuries arising from assault or battery. Therefore, the assault-or-battery exclusion clearly and unambiguously excludes from coverage the Wrights' claims.

{¶31} Because the Wrights are attempting to recover for injuries sustained by assault or battery, their claims against Larschied—that he failed to provide for

their safety and protect them from criminal acts of third parties, that his policies, practices, and customs demonstrated "a deliberate indifference to the rights of citizens," that he failed to implement policies, practices, and customs to protect the rights of citizens, and that he inadequately trained his employees—are excluded under the CGL Policy. The Wrights in their suit could have asserted any claim they wished against Larschied, and it still would have been excluded by the assault-or-battery exclusion so long as the Wrights were attempting to recover for injuries arising out of assault or battery.

{¶32} For these reasons, we hold that CSU has no duty to defend Larschied in the Wrights' suit because the CGL Policy's assault-or-battery exclusion clearly and unambiguously excludes from coverage the claims in the Wrights' complaint. There is no possibility of coverage under the CGL Policy based on the allegations in the Wrights' complaint.

{¶33} Larschied's first assignment of error is overruled.

**Assignment of Error No. II**

**The trial court in finding that the insurance policy did not provide coverage effectively created an illusory contract as it fails to provide any benefit to the insured.**

{¶34} In his second assignment of error, Larschied argues that the trial court's conclusion that the CGL Policy does not apply to the allegations in the Wrights' complaint "in essence creates an illusory insurance policy." (Appellant's

Brief at 11). Specifically, Larschied argues that "[t]he number and breadth of Endorsements attached and included within CSU's policy to Mr. Larschied have stripped away practically all coverage Mr. Larschied may have." (*Id.* at 12).

**{¶35}** "An insurance provision is illusory when it appears to grant a benefit to the insured, although in reality it does not." *Trautman v. Union Ins. Co.*, 3d Dist. Hancock No. 5-09-34, 2010-Ohio-1504, ¶ 20, citing *Beaverdam Contracting*, 2008-Ohio-4953, at ¶ 49. Conversely, "[w]here there is some benefit to an insured through an insurance policy, it is not illusory." *World Harvest Church v. Grange Mut. Cas. Co.*, 10th Dist. Franklin No. 13AP-290, 2013-Ohio-5707, ¶ 53, citing *Ward*, 129 Ohio St.3d 292, at ¶ 24. "Courts are not inclined to give insurance provisions a meaning that would render them illusory." *Beaverdam Contracting* at ¶ 49, citing *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, ¶ 133 (2d Dist.) and *Talbert v. Continental Cas. Co.*, 157 Ohio App.3d 469, 2004-Ohio-2608, ¶ 36 (2d Dist.).

**{¶36}** In this case, the assault-or-battery exclusion and the other endorsements to the CGL Policy do not render the CGL Policy illusory. Rather, "[CSU] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (CGL Policy at CGL Coverage Form, 1). CSU has provided at least one example of a "bodily injury" to which coverage would apply: "if a patron were to

slip and fall at the premises and sue Harry's, CSU would provide a defense (and under the right facts if Harry's acts were not intentional, indemnity) to Harry's for its negligence." (Appellee's Brief at 13). We agree that a claim arising out of those circumstances, as well as other circumstances, would fall within the coverage of the CGL Policy. (CGL Policy at CGL Coverage Form). Therefore, we hold that because the CGL Policy provides some benefit to Larschied, it is not illusory.

{¶37} Larschied's second assignment of error is overruled.

{¶38} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and SHAW, J.J., concur.**

**/jlr**