[Cite as *Turek v. Phelps*, 2016-Ohio-7552.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| CYRIL TUREK, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2016-A-0012** |
| RONALD C. PHELPS, et al., | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Case No. 2014 CV 00415.

Judgment: Affirmed.

*James S. Gentile* and *Rhys Brendan Cartwright-Jones*, 42 North Phelps Street, Youngstown, OH 44503 (For Plaintiff-Appellant).

*Katherine S. Riedel,* Law Offices of Katherine S. Riedel Co., L.P.A., Jefferson Commercial Park, 1484 State Route 46 North, No. 5, Jefferson, OH 44047 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1}  Plaintiff-appellant, Cyril Turek, appeals from the judgment of the Ashtabula County Court of Common Pleas, denying his motions for a directed verdict and judgment notwithstanding the verdict, as well as the verdict of the jury in favor of defendant-appellee, Ronald Phelps, on Turek's civil claims for Assault and Battery. The issues to be determined in this case are whether the elements of Assault and Battery are met to require a directed verdict or judgment notwithstanding the verdict when a

defendant admits to "tossing a can at" and hitting the plaintiff, and whether a judgment in favor of the defendant is against the weight of the evidence for these claims when the defendant denies otherwise touching the plaintiff. For the foregoing reasons, we affirm the judgment of the lower court.

**{¶2}** On June 18, 2014, Turek filed a Complaint against Ronald Phelps, John Phelps, Patricia Phelps, Phelps Marine Properties, Jack's Marine, and John and Jane Does. The Complaint related to an incident on June 21, 2013, in which Turek alleged that Ronald Phelps struck him in the head and "hit him in the head with a full can of beer." In Count One, Turek alleged that Phelps committed Assault and Battery which led to a disability to his arm. In Count Two, he asserted that this constituted Intentional Infliction of Emotional Distress. In Count Three, Turek claimed Negligence against the other defendants.

**{¶3}** The defendants filed an Answer on September 25, 2014.

**{¶4}** On July 30, 2015, John and Patricia Phelps, John and Jane Does, and Jack's Marine filed a Motion for Summary Judgment, arguing no genuine issue of material fact existed as to whether they had employed Ronald Phelps and, in the case of Jack's Marine, had knowledge of Phelps' "violent propensities." The trial court issued a Judgment Entry on October 21, 2015, granting the Motion for Summary Judgment.

**{¶5}** A jury trial was held on January 13 and 14, 2016. The following testimony and evidence were presented.

**{¶6}** Jared Taybus, a friend of Turek's son, testified regarding events that occurred while he was at Jack's Marine on June 21, 2013. According to Taybus, he was eating dinner with Turek. Turek, who was in a neck brace, had been dropped off at

the marina. While the two were eating, Phelps arrived and began yelling, telling Turek to leave. Taybus responded that Turek would leave as soon as they could get a ride, although he admitted that Turek swore at Phelps. Phelps then "threw his beer" can "like * * * you would throw a baseball," and he saw it strike Turek in the face. Phelps then punched Turek in the face and Taybus pushed Phelps and intervened to stop him.

{¶7} Following the incident, Taybus observed a cut on Turek's face. He testified that Turek did nothing to provoke the attack. Taybus and Turek did not know Turek was not permitted to be on the property when Phelps asked him to leave.

{¶8} During cross-examination, Taybus agreed that, in his police statement, he had stated that Turek was punched first and then the beer can was thrown. He agreed that in his deposition he mentioned that "the beer can got thrown at the table." He believed it hit Turek's face and ended up on the table, where Turek threw it at Phelps.

{¶9} Turek testified that on June 21, he had been dropped off at the marina by a friend, since his son was having a bachelor party there the next day. A few weeks earlier, he had surgery for a bulging disk in his neck, which had caused him to suffer weakness in his arm, and he was wearing a cervical collar on the date of the incident.

{¶10} According to Turek's version of the events, when he arrived, he began to eat dinner with Taybus. While eating, Phelps approached and began "screaming" at him to leave. Turek had previously become acquainted with Phelps through work that he did in the marina. He and Phelps had previously had a conflict about the payment of a bill, but they had otherwise gotten along. Turek explained that he had never been told not to be on the marina property before and that his son kept his boat there.

{¶11} Turek stated that he told Phelps he would leave but could not because he did not have a car. Phelps then threw his food on the ground. Turek opined that he was drunk. Turek pointed out that he had just had spinal surgery and Phelps said "I don't give an F, I'll beat your a** and throw you in the river right now." He then punched Turek in the eye and he fell onto the ground. After Turek stood back up, Phelps hit him in the side of the face with an unopened beer can, which was "like getting hit by a brick." After he was hit with the can, he threw it back toward Phelps. Turek stated that he did nothing to provoke the attack.

{¶12} After talking to the police, Turek was picked up by his daughter and taken to the hospital. Turek testified that, following the incident, he "lost the use of [his] right arm," had neck and shoulder pain, suffered nerve damage, and had another surgery.

{¶13} Cara English, Turek's daughter, testified that when she arrived to pick up her father after the incident, his face was a "little bit swollen", and he had a scratch. They drove from there to the VA hospital. Pictures of his injuries, showing swelling and bruising on his face that English described as getting worse after the incident, were presented.

{¶14} Phelps, testifying as on cross-examination, admitted that he tossed the beer can underhanded at Turek, which "kinda rolled up his shoulder and rolled into his neck" and spilled on him. He described that Turek "had [his] arm sitting on the table, and when I tossed it, it just kind of rolled up here, up into there." He described that he was "tensing up" and ready to hit Phelps, although he did not. He also admitted that he flipped Turek's plate of food.

{¶15} Dr. Christopher Furey, an orthopedic surgeon, performed spinal surgery in May 2013 to remedy weakness in Turek's arm by removing pressure, which had resulted in part from arthritis and a bulging disk. Dr. Furey saw him for the first time after the surgery on June 25, 2013, at which time Turek reported that he was significantly better post-surgery, until he was assaulted. While Dr. Furey observed no damage to the areas repaired during the May surgery, he opined that the assault, as described to him by Turek, aggravated his underlying conditions and was the cause of subsequent problems. Dr. Furey conceded that the second surgery addressed spondylotic/arthritic changes in Turek's spine, which were not caused by the assault.

{¶16} At the close of Turek's evidence, counsel moved for a directed verdict, based on the testimony that a beer can was tossed and landed on Turek, which was overruled.

{¶17} Phelps testified that he is a marine technician at Jack's Marine, which is his family's business. He knew Turek before this incident and had previously told him he could no longer dock his boat there due to complaints. Phelps explained that, because of a prior dispute over payment for boat washing, Turek was told not to come back to Jack's Marine.

{¶18} According to Phelps' testimony, when he saw Turek on June 21, he asked him to leave the property. Turek started calling him profane names, which made him mad. When Turek said he did not have a ride, Phelps asked him to walk toward the gate. He explained that both men were yelling and then he "just happened to have a beer can in [his hand] and I went like this." A video of the trial shows that he made a small hand gesture. He described the beer can as half full. He stated "I don't know if [it]

rolled on the table or if it - - but I mean, I was like his head was below me and I just went like this. I mean, I was 2 1/2 feet away from him, maybe." He stated that the can "rolled up his arm." Turek threw the beer can back at him and cursed, saying he would do "what he wants." Phelps then flipped the plate of food. He "tensed up" and Taybus grabbed him and told him to settle down. Phelps testified that he did not punch Turek and "never intended to hurt" him.

{¶19} Captain Gerald Cornelius of the Ashtabula City Police department responded to a call of an unwanted person at Jack's Marine on June 21. He noted that Phelps was "highly agitated" and he believed Phelps and Turek had been drinking. He saw a "slight cut" on Turek's left cheek but did not recall observing any other visible injury.

{¶20} Patrolman Thomas Clements with the Ashtabula City Police Department, also responded to the incident. He did not observe any injuries, except an abrasion on Turek's face that "appeared to have been scabbed over already."

{¶21} At the close of Phelps' evidence, Turek moved for a directed verdict on the Assault. The trial court denied the motion.

{¶22} The jury found in favor of Phelps. Turek moved for judgment notwithstanding the verdict, based on the fact that Phelps "admitted to" harmful and offensive contact. The trial court denied the motion, finding that "it was a jury question as to whether reasonable persons under the circumstances that they heard would find that to be offensive conduct."

{¶23} The trial court issued a Judgment Entry memorializing the verdict, filed on January 22, 2016. It noted that Turek had dismissed the claim against Phelps Marine

6

Properties and the claim for emotional distress against Phelps "on the record." It ordered that those claims were dismissed and judgment was rendered in favor of Ronald Phelps.

**{¶24}** Turek timely appeals and raises the following assignments of error:

**{¶25}** "[1.] The Trial Court erred in denying Cyril Turek's motions for judgment on the pleadings and JNOV.

**{¶26}** "[2.] The jury entered a verdict against the manifest weight of the evidence."

**{¶27}** Turek first argues that the trial court erred in denying his motions for a directed verdict and a judgment notwithstanding the verdict as to the claims of Assault and Battery.

**{¶28}** "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." Civ.R. 50(A)(4).

**{¶29}** A trial court's decision to grant a motion for directed verdict is reviewed under a de novo standard. *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, 959 N.E.2d 1033, ¶ 22; *O'Day v. Webb*, 29 Ohio St.2d 215, 280 N.E.2d 896 (1972), paragraph three of the syllabus ("[a] motion for directed verdict * * * does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence"). "A motion for a directed verdict

7

assesses the sufficiency of the evidence, not the weight of the evidence or the credibility of the witnesses." (Citations omitted.) *Dennison v. Lake Cty. Commrs.*, 11th Dist. Lake No. 2013-L-067, 2014-Ohio-4294, ¶ 52.

{¶30} "The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict." *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976).

{¶31} Civil Assault is the "intentional offer or attempt, without authority or consent, to harm or offensively touch another that reasonably places the other in fear of such contact." (Citation omitted.) *Batchelder v. Young*, 11th Dist. Trumbull No. 2005-T-0150, 2006-Ohio-6097, ¶ 23, fn. 3.

{¶32} In a civil matter, Battery is defined as "an intentional, unconsented-to contact with another." *Snyder v. Turk*, 90 Ohio App.3d 18, 23, 627 N.E.2d 1053 (2d Dist.1993); *Batchelder* at ¶ 23, fn. 3. "A person is subject to liability for battery when he acts intending to cause a harmful or offensive contact, and when a harmful contact results." *Love v. Port Clinton*, 37 Ohio St.3d 98, 99, 524 N.E.2d 166 (1988). "A defendant possesses the requisite level of intent to commit a Battery if he '"desires to cause [the] consequences of his act, or * * * believes that the consequences are substantially certain to result from it."'" *McRae v. Icon Entertainment Group, Inc.*, 10th Dist. Franklin No. 08AP-820, 2009-Ohio-5119, ¶ 8, citing *Harasyn v. Normandy Metals, Inc.*, 49 Ohio St.3d 173, 175, 551 N.E.2d 962 (1990), quoting 1 Restatement of the Law 2d, Torts, Section 8A, at 15 (1965).

8

{¶33} Turek argues that Phelps "offered no defense to the bare elements of assault," since he admitted to "tossing the beer can at" Turek and this met the elements of Battery and Assault, since there was an attempted infliction and/or actual infliction of harmful or offensive contact.

{¶34} A main issue in the present matter is whether Phelps had the intent to cause contact that rose to the level of harmful or offensive, an issue the trial court judge left to the jury. While Phelps admitted to "tossing" a half-empty beer can, he demonstrated the toss with a small hand gesture to indicate a limited amount of force, and also testified that he did not intend to harm Turek. Given his additional testimony that the can may have struck the table and/or "rolled up" Turek's arm, there was a question for the jury to decide about the matters of intent and the level of contact that occurred. Courts, in various scenarios, have found that the issue of intent is a factual one, and, as such, is for the trier of fact to decide. *See Hunt v. Alderman*, 9th Dist. Summit No. 27416, 2015-Ohio-4667, ¶ 19 (holding, in an employer intentional tort case, that intent to cause harm was a factual issue); *Walker v. Bunch*, 7th Dist. Mahoning No. 05-MA-144, 2006-Ohio-4680, ¶ 40 (noting that, given differing versions of the facts, intent was an issue to be determined at trial).

{¶35} Given the foregoing, the jury could have decided, among other things, that the required intent element was missing based on the facts presented. Although Turek claims Phelps admitted to the elements of the claims, he did not admit to having the requisite intent. When construing the evidence most strongly in favor of Phelps, the trial court properly decided that the Assault and Battery claims should be submitted to the jury and denied the request for judgment notwithstanding the verdict.

9

**{¶36}** The first assignment of error is without merit.

**{¶37}** In his second assignment of error, Turek argues that the jury's verdict was against the manifest weight of the evidence.

**{¶38}** When reviewing the weight of the evidence, the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Citation omitted.) *Eastley v. Volkman*, 132 Ohio St. 3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

**{¶39}** In reviewing the record before this court, we do not find that the jury's verdict was against the manifest weight of the evidence. Much of the testimony presented by the opposing sides was contradictory. Phelps denied punching Turek and testified that he tossed a half can of beer at Turek, demonstrating a light toss, while Taybus described it being thrown "like a baseball." Phelps denied that he had intent to harm Turek and described the can as possibly hitting the table and/or hitting and rolling up Turek's arm. The police officers did not observe injuries to the extent shown in the photographs submitted as evidence by Turek. "When assessing the credibility of witnesses, '[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" (Citations omitted.) *Jones v. Hunter*, 11th Dist. Portage No. 2008-P-0015, 2009-Ohio-917, ¶ 23. If the jury believed Phelps' version of events,

10

it was not against the weight of the evidence to conclude he lacked the intent to cause harmful or offensive contact.

{¶40} In addition, it is impossible to know the exact basis for the jury's verdict, given the general verdict form stating only that it found in favor of Phelps. Based on the evidence before it, it could have concluded that there was a lack of intent as outlined above. It may also have concluded, based on the evidence, that no harmful or offensive contact occurred. Regarding harmful contact, while Dr. Furey testified that the Assault aggravated Turek's pre-existing injury, he never observed the results of the surgery prior to the incident and based his conclusion that the Assault caused the injuries primarily upon Turek's statement that he felt better after the initial surgery and worse only after the Assault. In addition, there was some conflicting testimony whether Turek had any observable injury at the scene of the incident, further supporting a conclusion that no harm occurred. Regarding offensive contact, this has been defined as "offensive to a reasonable sense of personal dignity." *Love*, 37 Ohio St.3d at 99, 524 N.E.2d 166. Again, based on the facts surrounding the events, it was not against the weight of the evidence to determine either that the contact was not offensive or was not intended to be offensive.

{¶41} The second assignment of error is without merit.

{¶42} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is affirmed. Costs to be taxed against appellant.


CYNTHIA WESTCOTT RICE, P.J.,

TIMOTHY P. CANNON, J.,

concur.

11