[Cite as *Badders v. Century Ins. Co.*, 2019-Ohio-1900.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| JEROME BADDERS, et al. | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28170 |
| | : | |
| v. | : | Trial Court Case No. 2014-CV-3042 |
| | : | |
| CENTURY INSURANCE COMPANY | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 17th day of May, 2019.

. . . . . . . . . .

JEFFREY D. SLYMAN, Atty. Reg. No. 0010098, 211 Kenbrook Drive, Suite 5, Vandalia, Ohio 45377, and JONATHAN B. FREEMAN, Atty. Reg. No. 0067683 and STEVEN E. BACON, Atty. Reg. No. 0059926, 1 South Main Street, Suite 1590, Dayton, Ohio 45402
　　　Attorneys for Plaintiff-Appellant

RICHARD M. GARNER, Atty. Reg. No. 0061734 and JEFFREY S. MAYNARD, Atty. Reg. No. 0073629, 655 Metro Place, Suite 200, Dublin, Ohio 43017
　　　Attorneys for Defendant-Appellee

. . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Plaintiff-appellant, Jerome Badders, dba Courtyard Lounge, LLC, appeals from the trial court's final order of September 20, 2018, in which the trial court granted summary judgment to Defendant-appellee, Century Surety Company ("CSC"). [1] Presenting one assignment of error, Badders argues that the trial court erred by entering judgment under Civ.R. 56 because an issue of fact material to his causes of action against CSC remained subject to dispute. Despite the premise of this assignment of error, however, the argument offered by Badders is, in essence, a challenge to the trial court's interpretation of a contract of insurance, which is an issue of law, rather than an issue of fact. We find that the trial court correctly applied the law to the contract in question, and therefore, the final order of September 20, 2018, is affirmed.

## I. Facts and Procedural History

**{¶ 2}** This case began with an incident in December 2012. At that time, Marvin Schalk was a regular patron of the Courtyard Lounge, a bar in Englewood. *See State Farm Mut. Auto. Ins. Co. v. Schalk*, 2d Dist. Montgomery No. 26573, 2016-Ohio-732, ¶ 3. On the evening of December 29, 2012, Schalk visited the Courtyard Lounge and encountered his estranged wife, Linda, who was also a regular patron; the two were separated but still married. *Id.*; Decision, Order and Entry Sustaining CSC's Motion for

---

[1] In its answer to Badders's complaint, CSC noted that Badders had incorrectly referred to it as "Century Insurance Group," rather than its actual name, "Century Surety Company," though CSC never moved to have the caption of the case corrected. In the final order from which Badders appeals, the incorrect identification of CSC as "Century Insurance Company" appears for the first and only time in the trial court's record. (Pursuant to App.R. 11(A), the appeal is "docketed under the title given to the action in the trial court," i.e. in the judgment on appeal, which explains the caption of the instant appeal.) Similarly, Badders was the only plaintiff, but the caption of the order on appeal refers to "Jerome Badders, et al., Plaintiff [sic]."

Summary Judgment 2, Sept. 20, 2018 [hereinafter *Final Order*]. While there, Schalk drank heavily. *Schalk* at ¶ 3.

{¶ 3} At approximately 2:00 a.m. on December 30, 2012, Schalk was asked to leave the premises because he had made inappropriate remarks to his wife. *See id.* at ¶ 4; Final Order 2. A friend of Schalk's agreed to drive him home, but instead, the two men took Schalk's pickup truck to a house across the street. *Schalk* at ¶ 4. Schalk's wife had not left with him, and several minutes later, Schalk returned to the bar in his truck. *Id.* Although the Courtyard Lounge had closed in the interim, Schalk knew that employees and patrons sometimes lingered inside after the close of business. *Id.*

{¶ 4} From the parking lot, Schalk began sending text messages to his wife, among which was a threat to drive his truck into the front of the building. *See id.* at ¶ 5. Shortly after making this threat, Schalk followed through, causing extensive damage to the building and injuring a patron, Tatyana Belenky, as well as an employee.[2] *See id.* at ¶ 1-6; Final Order 3. Schalk subsequently pleaded guilty to two counts of felonious assault, second degree felonies pursuant to R.C. 2903.11(A)(1) and (D)(1), and one count of vandalism, a fourth degree felony pursuant to R.C. 2909.05(B)(1)(a) and (E).

{¶ 5} On December 2, 2013, Belenky filed a complaint against Badders, and Schalk's wife, in Montgomery County Court of Common Pleas Case No. 2013 CV 07351. Badders, who had been insured by CSC under Policy No. CCP751735 (the "Policy") for the period running from March 4, 2012, to March 4, 2013, demanded accordingly that CSC interpose a defense to Belenky's claims and indemnify him in the event he was

---

[2] The injured employee might have been either Badders himself or his adult daughter, Lora. *Compare* Complaint, Montgomery C.P. No. 2013 CV 07351 (Dec. 2, 2013), ¶ 1-12, *with Schalk* at ¶ 4-6, *and* Final Order 3.

found liable. Final Order 3. CSC determined that it had no such obligations under the Policy, prompting Badders to file his complaint in the instant matter on May 23, 2014. *Id.*

{¶ 6} CSC moved for summary judgment on July 21, 2015, but partly as the result of related litigation, which led to the appeal in *Schalk*, the trial court did not rule on CSC's motion until September 20, 2018, when it issued the Final Order. Badders timely filed his notice of appeal on October 17, 2018.

## II. Analysis

{¶ 7} For his assignment of error, Badders contends that:

THE TRIAL COURT ERRED IN GRANTING CENTURY SURETY COMPANY SUMMARY JUDGMENT AND IN FINDING THAT THE CENTURY POLICY'S "ASSAULT AND BATTERY" EXCLUSION APPLIED TO BAR COVERAGE FOR APPELLANT, JEROME BADDERS, AS TO TATYANA BELENKY'S CLAIMS ARISING FROM THE ACTS OF A TORTFEASOR, MARVIN SCHALK, WHEN THERE WAS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER SCHALK INTENDED TO CAUSE INJURY.

{¶ 8} The disagreement between Badders and CSC concerns two endorsements to the Policy, one of which excludes coverage for personal injuries and property damage "arising out of or resulting" from "any actual, threatened or alleged assault or battery," and the other of which excludes coverage for personal injuries and property damage "for which any insured may be held liable" under any "statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages." *See* Policy, Special

Exclusions and Limitations Endorsement, *and* Exclusion—Assault and Battery.[3] In the Final Order, the trial court granted summary judgment to CSC because it found that the first of the foregoing endorsements applied to Belenky's claims against Badders. Final Order 9. The court deemed an evaluation of the second endorsement to be unnecessary, having found that the claims were excluded pursuant to the first. *Id.*

{¶ 9} Badders argues that the first of the endorsements does not exclude coverage for Belenky's claims against him because "Schalk's actions were not necessarily * * * an 'assault' or a 'battery.' " Appellant's Br. 10. Additionally, Badders argues that the second of the endorsements does not exclude coverage because R.C. 4399.18, also known as the Dram Shop Act, was not the sole basis of his potential liability to Belenky.

{¶ 10} Under Civ.R. 56(C), summary judgment is proper when: (1) a case presents no genuine dispute as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion, which is adverse to the non-moving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); *Dalzell v. Rudy Mosketti, L.L.C.*, 2d Dist. Clark No. 2015-CA-93, 2016-Ohio-3197, ¶ 5, citing *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The substantive law of the claim or claims being litigated determines whether a fact is "material." *Herres v. Millwood Homeowners Assn., Inc.*, 2d Dist. Montgomery No. 23552, 2010-Ohio-3533, ¶ 21, citing *Hoyt, Inc. v. Gordon & Assocs., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

---

[3] CSC attached a complete copy of the Policy as an exhibit to its motion for summary judgment of July 21, 2015.

**{¶ 11}** Initially, the movant bears the burden of establishing the absence of any genuine issue of material fact. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). The movant may rely only on evidence of the kinds listed in Civ.R. 56(C) for this purpose. *Dalzell* at ¶ 5, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant meets its burden, then the non-moving party bears a reciprocal burden to establish, as set forth in Civ.R. 56(E), that the case presents one or more genuine issues of fact to be tried. *Id.* at ¶ 6. The non-moving party, in satisfying this requirement, may not rely merely upon the allegations or denials offered in the pleadings, but like the movant, "must be able to point to evidentiary materials of the type listed in Civ.R. 56(C)." *Dresher* at 293, quoting Civ.R. 56(E); *Dalzell* at ¶ 6. On appeal, a trial court's ruling on a motion for summary judgment is reviewed de novo. *Dalzell* at ¶ 6, citing *Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42.

**{¶ 12}** Regarding the Policy's exclusion of coverage for liability resulting from "any actual, threatened or alleged assault or battery," Badders posits that "Schalk's actions were not necessarily either an 'assault' or a 'battery' " in light of a genuine dispute "as to whether Schalk intended to injure Belenky." *See* Appellant's Br. 10; Policy, Exclusion—Assault and Battery. Badders bases this proposition on the distinction between the statutory definition of assault and the common law definition. *See id.* at 10 and 13-15. The common law tort of assault, like the common law tort of battery, is an intentional tort. *See, e.g., Turek v. Phelps*, 11th Dist. Ashtabula No. 2016-A-0012, 2016-Ohio-7552, ¶ 30-34; *Smith v. John Deere Co.*, 83 Ohio App.3d 398, 406, 614 N.E.2d 1148 (10th Dist.1993). By contrast, criminal assault in Ohio takes several forms, though none of them requires proof that the alleged offender acted with intent; felonious assault under R.C.

2903.11(A)(1), for instance, prohibits any person from "knowingly," rather than "intentionally," causing "serious physical harm to another or to another person's unborn." *See, e.g., GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 57 (2d Dist.) (noting that assault under the Revised Code "is not a direct or specific-intent crime"); *Nationwide Mut. Ins. Co. v. Machniak*, 74 Ohio App.3d 638, 641, 600 N.E.2d 266 (8th Dist.1991) (noting that, "[a]s statutorily defined, felonious assault is not a specific-intent crime"); *see also* R.C. 2903.12 (aggravated assault); R.C. 2903.13 (assault); R.C. 2903.14 (negligent assault).

{¶ 13} According to Badders, because the Policy itself does not provide a definition of assault, the trial court should have applied only the common law definition, which he insists is the "plain and ordinary meaning" of the term. *Id.* at 11-13. Were the common law definition controlling, the trial court, as Badders argues, presumably would have erred by entering judgment under Civ.R. 56 because the question of whether Schalk intended to harm anybody other than himself had not been settled when the trial court issued the Final Order. *See* Final Order 7-8; *see also Schalk*, 2d Dist. Montgomery No. 26573, 2016-Ohio-732, at ¶ 35-39. The question of how to construe the Policy's use of the term "assault" is, nevertheless, a question of contract interpretation, or in other words, a question of law. *Schaeffer v. Nationwide Mut. Ins. Co.*, 2d Dist. Greene No. 2001 CA 131, 2002-Ohio-4811, ¶ 14, citing *Leber v. Smith*, 70 Ohio St.3d 548, 553, 639 N.E.2d 1159 (1994).

{¶ 14} We find that Badders's argument lacks merit. Badders fails to establish that the plain and ordinary meaning of the term "assault" is, and can only be, the common law definition. At common law, the tort of assault "is defined as the willful <u>threat or</u>

attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." (Emphasis added.) *John Deere* at 406. Essentially the same definition of the term appears in *Black's Law Dictionary*. *See, e.g., Black's Law Dictionary* 105 (5th Ed.1979). Nevertheless, this definition applies to the word "assault" as the denomination of a common law cause of action, and for that reason, it is not necessarily representative of the "plain and ordinary meaning" of the word. In dictionaries of general usage, as opposed to a specialized reference like *Black's Law Dictionary*, the word "assault" is defined as "[a]n attack or violent onset, whether by an individual [person], a company, or an army." *Webster's New Twentieth Century Dictionary of the English Language* 107 (1964). To most persons, other than lawyers and legal professionals, this latter definition is almost certainly the "plain and ordinary meaning" of the word "assault." In fact, *Black's Law Dictionary* notes that the word is "[f]requently used to describe illegal force which is technically a battery." *Black's Law Dictionary* 105 (5th Ed.1979). Even lawyers and legal professionals, for that matter, probably use the word in reference to the crime of assault as often, or more so, as they use the word in reference to the common law tort.

{¶ 15} Badders relies on a single decision from the Third District Court of Appeals to support his contention that "Ohio [c]ourts [sic] of [a]ppeal have previously looked to [the] common law for the * * * plain and ordinary meaning" of the word "assault" and have "found that an 'assault' is 'the willful threat or intent to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact.' " Appellant's Br. 13, quoting *Wright v. Larschied*, 3d Dist. Allen No. 1-14-02, 2014-Ohio-3772, ¶ 27. Yet, the opinion actually provides little or no support for the position taken by Badders.

{¶ 16} In *Wright*, two patrons of a bar sued the bar's owner for injuries they suffered after being " 'attacked and struck' " by other patrons. *Wright* at ¶ 1-2. The owner's insurance company denied that it had any duty to defend the owner in the lawsuit because the owner's policy included a coverage exclusion, comparable to the exclusion at issue here, for injuries arising from an assault or battery. *Id.* at ¶ 1-2 and 8. In response, the owner argued that because the causes of action asserted against him were " 'negligence,' 'violation of policy, practice or custom,' and 'failure to supervise,' " the exclusion was inapplicable. *See id.* at ¶ 1-2 and 15. The trial court concurred with the insurance company. *See id.* at ¶ 13.

{¶ 17} Affirming the trial court, the Third District observed that the exclusion "clearly and unambiguously" applied to "<u>any</u> bodily injury arising out of an assault or battery," irrespective of "how the assault or battery occurred or who may or may not have contributed to its occurrence." (Emphasis sic.) *Id.* at ¶ 1 and 28. Although the Third District discussed the common law definition of assault in the course of its analysis, the decision is largely inapposite to this case because the intent, or lack thereof, of those who injured the plaintiffs was not at issue. Instead, the Third District was asked to determine whether the plaintiffs had suffered injuries " 'arising out of' " an assault or battery, rather than to ascertain the meaning of the term "assault." *See id.* at ¶ 25-28. Furthermore, the Third District appears to have considered the statutory definition of assault in addition to the common law definition; summarizing its reasoning, the court remarked that because the plaintiffs were "attempting to recover for their injuries sustained by assault or battery, their claims against [the owner of the bar]—that he failed to provide for their safety and [to] protect them from <u>criminal acts of third parties</u>, * * *, [were] excluded under the

[owner's] [p]olicy." (Emphasis added.) *Id.* at ¶ 31. The *Wright* decision thus provides little or no support for the proposition that only the common law definition of assault may be applied to an insurance policy that does not itself define the term.

**{¶ 18}** Moreover, Badders assumes in making his argument that the term "assault" is ambiguous merely because it has more than one definition. This assumption is unwarranted. For example, we previously considered whether an analogous coverage exclusion was ambiguous with respect to its application to "assaults committed by [a bar's] third-party patrons as opposed to assaults committed by [the bar's] employees," given that the policy at issue did not specify as much. *Colter v. Spanky's Doll House*, 2d Dist. Montgomery No. 21111, 2006-Ohio-408, ¶ 5-25 and 32-41. We found that even in the absence of an express "distinction between different [categories] of [persons] who may commit an assault or battery," the policy's exclusion "unambiguously extend[ed] to all claims arising out of or related to an assault or battery, regardless of whether the misconduct [was] committed by a[n] * * * employee or [by] a third-party patron." *Id.* at ¶ 41. Likewise, in this case, we find that the exclusion of coverage for personal injuries and property damage "arising out of or resulting" from "any actual, threatened or alleged assault or battery" unambiguously applies to exclude coverage for personal injuries and property damage that result from any legally cognizable form of assault, without respect to whether the assault is criminal or tortious.

**{¶ 19}** Regarding the Policy's exclusion of coverage for personal injuries and property damage "for which any insured may be held liable" under any "statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages," Badders argues that the trial court was required to evaluate "the scope of [Belenky's] allegations"

against him to determine whether the Policy provided or excluded coverage. Appellant's Br. 18; *see* Policy, § 1, Coverage A, *and* Special Exclusions and Limitations Endorsement. He maintains accordingly that the exclusion is inapplicable because Belenky failed to state a claim pursuant to the Dram Shop Act, and that the Dram Shop Act "is not indisputably applicable to the facts of this case," under which Belenky "could assert a[n] [independent] claim for violation of common law duties." *See id.* at 18-21.

{¶ 20} As did the trial court, however, we find that our determination regarding the applicability of the Policy's assault-and-battery exclusion obviates the need for a determination regarding the applicability of the Policy's Special Exclusions and Limitations Endorsement. Badders's assignment of error is overruled.

### III. Conclusion

{¶ 21} We find that the term "assault" as used in the Policy unambiguously includes the common law tort of assault and the crime of assault as defined in the Revised Code. Therefore, the trial court's final order of September 20, 2018, is affirmed.

. . . . . . . . . . . .

WELBAUM, P.J., concurs.

FROELICH, J., dissents:

{¶ 22} The trial court granted summary judgment to CSC, finding, as a matter of law, that CSC had no contractual obligation to defend and indemnify the Courtyard Lounge and Badders under the terms of its policy. As discussed above, the trial court determined that coverage was precluded by an Assault and Battery exclusion. I would

find that the exclusion for personal injuries and property damage "arising out of or resulting" from "any actual, threatened or alleged assault or battery"    incorporates only common law definitions and, further, that genuine issues of material fact precluded summary judgment regarding the Assault and Battery exclusion.   Accordingly, I dissent.

## I. TATYANA BELENKY'S CLAIM

{¶ 23} In her amended complaint (CSC Motion for Summary Judgment Ex. 8), Tatyana Belenky alleged that the Courtyard Lounge was a retail liquor establishment, which dispensed beer, wine, and spirits in accordance with its liquor license.   From approximately 2:45 a.m. through 2:53 a.m. on December 30, 2012, Belenky and Linda Schalk ("Linda") were patrons of the Courtyard Lounge.   During that time, Linda received several text messages from Schalk, indicating that he would drive his truck through the Courtyard Lounge, in an effort to die by suicide, if she did not exit the bar within five minutes.   Linda showed the text message to Lora Badders, bartender at the bar, but no one else.   Lora Badders did not warn others of the danger.   At approximately 2:53 a.m., Schalk drove his pick-up truck through the front wall of the Courtyard Lounge, causing injuries to Belenky.

{¶ 24} In her claim against Badders, dba Courtyard Lounge, LLC, Belenky alleged that Badders had breached his duty of care to her by negligently failing to (1) remove, exit, or evacuate patrons, (2) warn business invitees of the immediate foreseeable danger of Schalk's driving his truck through the storefront, (3) protect Belenky and others by directing them to a safe place after being placed on notice of Schalk's intended actions, (4) supervise, hire, or train its employees, (5) follow applicable Ohio, local liquor, and safety laws regarding evacuation of the premises, (6) warn its patrons about or protect

them from the criminal acts of third parties, (7) adhere to and abide by laws related to the duties and responsibilities of a business owner to business invitees, and (8) warn Belenky and others, through his employees, of Schalk's intended actions.

**{¶ 25}** Belenky did not allege that Schalk was intoxicated.   However, additional evidence in this case, including Schalk's deposition testimony, established that he was intoxicated when he left the Courtyard Lounge.   *See Preferred Risk Ins. Co. v. Gill*, 30 Ohio St.3d 108, 112-113, 507 N.E.2d 1118 (1987) (in declaratory judgment action on duty to defend and/or indemnify, insurer may proceed to demonstrate that the facts alleged in the underlying tort complaint differ from the actual facts and that the actual facts removed the insured's conduct from coverage); *Cincinnati Ins. Co. v. Anders*, 99 Ohio St.3d 156, 2003-Ohio-3048, 789 N.E.2d 1094, ¶ 20-21 (discussing *Gill*).

## II. LAW REGARDING INSURANCE CONTRACTS

**{¶ 26}** An insurer may institute a declaratory judgment action to determine "its rights and obligations under a contract of insurance."   *Mid-American Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 8, quoting *Gill* at paragraph one of the syllabus.

**{¶ 27}** "The duty of an insurer to defend an insured is a broad duty—broader than the duty to indemnify—that is absolute when the complaint contains any allegation that could arguably be covered by the insurance policy.   An exception to the absolute duty exists when all the claims are each clearly and indisputably outside the coverage. Another way of stating the exception is that the insurer need not provide a defense if there is no set of facts alleged in the complaint that, if proved true, would invoke coverage for any claim."   (Citations omitted.)   *Granger v. Auto-Owners Inc.*, 144 Ohio St.3d 57, 2015-

Ohio-3279, 40 N.E.3d 1110, ¶ 21.

{¶ 28} The interpretation of a contract is a question of law. *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶ 38; *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995). When reviewing a contract, the court's primary role is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999). A contract that is, by its terms, clear and unambiguous requires no real interpretation or construction and will be given the effect called for by the plain language of the contract. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55, 544 N.E.2d 920 (1989).

{¶ 29} Where terms in an insurance contract are not defined, courts will give them their plain and ordinary meaning. *E.g., Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11; *Colter*, 2d Dist. Montgomery No. 21111, 2006-Ohio-408, ¶ 29. While terms in an insurance contract are to be given their plain and ordinary meaning, any ambiguity is construed against the insurer. *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, ¶ 15.

"[A]n exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." (Emphasis sic.) *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (1992). Exclusions are strictly construed against the insurer, and will only be enforced if they unambiguously deny coverage under the policy. *[Allstate Ins. Co. v.] Eyste*r, 2010-Ohio-3673 at ¶ 19, 189 Ohio App.3d 640, 939 N.E.2d 1274 [(3d Dist)].

*Cincinnati Specialty Underwriters Ins. Co. v. Larschied*, 3d Dist. Allen No. 1-14-01, 2014-Ohio-4137, ¶ 22.

### III. CSC'S ASSAULT AND BATTERY EXCLUSION

{¶ 30} CSC's Commercial General Liability Coverage Form provides that CSC will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. CSC also had the "right and duty to defend the insured against any 'suit' seeking those damages. However, [CSC] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (CSC Motion for Summary Judgment Ex. 3 – CENTURY-000016) The policy contains numerous exclusions, including exclusions for Assault and Battery and for Liquor Liability.

{¶ 31} The Assault and Battery exclusion in CSC's policy excluded coverage for personal injuries and property damage "arising out of or resulting" from "any actual, threatened or alleged assault or battery." Badders argues that Schalk's actions were not necessarily an assault or a battery, because there was a genuine issue of material fact as to whether Schalk intended to injure Belenky.

{¶ 32} In my view, the Assault and Battery exclusion in CSC's policy reasonably includes only the common law definition of "assault" and "battery." The tort of assault is defined as "the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." *Wenzel v. Al Castrucci, Inc.*, 2d Dist. Montgomery No. 17485, 1999 WL 397366, * 7 (June 18, 1999), citing *John Deere Co.*, 83 Ohio App.3d 398, 406, 614 N.E.2d 1148. A battery occurs when there is actual harmful and/or offensive contact. *Id.* Assault and battery are intentional torts.

*See, e.g., Turek*, 11th Dist. Ashtabula No. 2016-A-0012, 2016-Ohio-7552, ¶ 30-34; *John Deere* at 406; *McKinley v. Chris' Band Box*, 153 Ohio App.3d 387, 2003-Ohio-4086, 794 N.E.2d 136, ¶ 14 (2d Dist.) ("An assault is an intentional act.").

{¶ 33} In contrast, Ohio's criminal law punishes certain behaviors that cause harm under the category "Assault." *See* R.C. 2903.11 to R.C. 2903.16. A person commits felonious assault in violation of 2903.11 when the person "knowingly" causes physical harm to another or to another's unborn, or causes or attempts to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance. R.C. 2903.11(A)(1) and (2). A person who is HIV positive commits felonious assault if he or she knowingly engages in sexual conduct under certain circumstances. R.C. 2903.11(B). Aggravated assault, which concerns conduct while under the influence of sudden passion or in a sudden fit of rage, also requires the offender to act knowingly. R.C. 2903.12. The offense of assault can be based on knowingly causing or attempting to cause physical harm, R.C. 2903.13(A), or recklessly causing serious physical harm, R.C. 2903.13. A person commits negligent assault if he or she negligently causes physical harm by means of a deadly weapon or dangerous ordnance. R.C. 2903.14. The offenses of "permitting child abuse" and "failing to provide for functionally impaired person" also fall within the "Assault" statutes. There is no category of offenses under the label "Battery," although there is the offense of sexual battery. *See* R.C. 2907.03.

{¶ 34} The use of "assault and battery" in the common vernacular does not consider the myriad of behaviors and intent levels reflected in the criminal code for assault offenses. Rather, as stated by the Third District, "[t]he terms 'assault' and 'battery' carry a specific legal connotation pertaining to conduct constituting intentional torts meaning

that a wrongful threat or a wrongful use of force has occurred." *Hawk v. Stocklin*, 3d Dist. Allen No. 1-13-56, 2014-Ohio-2335, ¶ 29 (applying the plain and ordinary meaning of the terms "assault" and "battery" in an insurance policy endorsement). Moreover, any ambiguity in the meaning of "assault" and "battery" should be construed in favor of the insured and against the insurer. *Lager*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, at ¶ 15.

{¶ 35} Applying the common law meaning of "assault or battery" to CSC's policy, there are genuine issues of material fact as to whether the exclusion applies, because there is an issue of fact as to whether Schalk intended to threaten, attempt to harm, or harm another when he drove his truck into the bar. As we stated in related litigation involving Schalk,

> Based on the evidence presented in this case, the trial court erred in concluding, as a matter of law, that there were no genuine issues of material fact as to whether Schalk "intentionally caused bodily injury" to patrons of the bar and that his actions were so "intrinsically tied" to the injuries as to infer such an intent. Although injuries were certainly foreseeable, foreseeability is insufficient to infer an intent to injure, because foreseeability of an injury is often present when an act is merely reckless or wanton (i.e., something less than intentional). Foreseeability or substantial certainty of injury does not "intrinsically tie" an injury to an intentional act. *See* [*Allstate Ins. Co. v. Campbell*, 128 Ohio St.3d 186, 2010-Ohio-6312, 942 N.E.2d 1090] at ¶ 52-56.

*Schalk*, 2016-Ohio-732, 47 N.E.3d 926, ¶ 39. The fact that Schalk pled guilty to

felonious assault did not conclusively establish that he acted with the intent to injure Belenky or others. *Accord, e.g., Machniak*, 74 Ohio App.3d 638, 641, 600 N.E.2d 266 (8th Dist.1991) (driver's felonious assault conviction did not affirmatively establish intent to injure for purposes of insurance coverage).

{¶ 36} Accordingly, I would conclude that the trial court erred in granting summary judgment to CSC on its claim of lack of coverage based on the Assault and Battery exclusion. I would remand for the trial court to consider whether the Liquor Liability exclusion applies.

Copies sent to:

Jeffrey D. Slyman
Jonathan B. Freeman
Steven E. Bacon
Richard M. Garner
Jeffrey S. Maynard
Hon. Barbara P. Gorman